

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2005

# Castro Barrios v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3211

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Castro Barrios v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1490.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1490

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3211
_____

MIGUEL FRANCISCO CASTRO BARRIOS,
                                      Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES*,
                                      Respondent.

_____

On Petition for Review of Order of Removal
from the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A73-048-242)

_____

Argued: Wednesday, December 15, 2004
_____

Before: NYGAARD and GARTH, <u>Circuit</u> <u>Judges</u>, and
POLLAK, <u>District</u> <u>Judge</u>*

_____

* The Honorable Louis H. Pollak, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

(Opinion Filed:  February 25, 2005)

_____

OPINION

_____

ROBERT FRANK, Esq. (argued)
60 Park Place, Suite 1304
Newark, NJ 07102

   *Attorney for Petitioner*
   *Miguel Castro Barrios*

PETER D. KEISLER
Assistant Attorney General
Civil Division

MICHELLE E. GORDEN
Senior Litigation Counsel
Office of Immigration Litigation

THOMAS H. TOUSLEY (argued)
Attorney
Office of Immigration Litigation
Civil Division
United States Department of Justice
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044

*Attorneys for Respondent*
*Attorney General of the United States*

Garth, <u>Circuit</u> <u>Judge</u>:

Section 242B(e) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996), prohibits an alien who has remained in the United States after the scheduled date of voluntary departure from applying for certain forms of relief, including an adjustment of status, for a period of five years.[1] A proper showing of "exceptional circumstances" is the only escape from the clear strictures of that provision. *See* 8 U.S.C. §§ 1252b(e)(2)(A), (f)(2) (repealed 1996).

In this appeal, we must decide whether the failure of the immigration authorities to adjudicate a timely and properly filed motion to reopen during the pendency of the period of voluntary departure falls within the "exceptional circumstances" exception to section 242B(e). We hold that a motion to reopen that has not been intentionally delayed and has been filed *prior to the date of voluntary departure*, but not acted upon by the immigration authorities, falls within the "exceptional circumstances" exception, and thus we grant Barrios's Petition for Review.

I.

---

[1] Barrios's petition is controlled by that now-repealed section because he was charged by the INS with deportation prior to its repeal.

In December of 1988, Miguel Castro Barrios, a native and citizen of Chile, was lawfully admitted to the United States as a visitor for pleasure for the period ending on June 27, 1989. At the time of his entry, Barrios was nine years of age. He has remained in the United States since that time, receiving the majority of his education in American schools.

On July 1, 1996, the then-Immigration and Naturalization Service ("INS")[2] served Barrios with an Order to Show Cause, charging him with deportability under section 241(a)(1)(B) of the INA, 8 U.S.C. § 1251(a)(1)(B), as an overstay. After the conclusion of the deportation proceedings,[3] in which the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") found Barrios deportable as charged and denied his application for suspension of deportation, the BIA granted Barrios voluntary departure in lieu of deportation through April 26, 2003.

Barrios never left the United States, and on April 10, 2003, he married a United States citizen, Ms. Stacy Kuspiel. Five days later, on April 15, 2003, Kuspiel filed an Alien

---

[2] The INS is now the Bureau of Citizenship and Immigration Services within the Department of Homeland Security. 6 U.S.C. § 271. Because the INS commenced the relevant proceedings, we will use INS herein, unless otherwise indicated.

[3] Barrios's case was consolidated with the related cases of his parents and sister into one deportation proceeding.

Relative Petition (Form I-130) on Barrios's behalf with the United States Bureau of Citizenship and Immigration Services, seeking to secure him permanent resident status as the spouse of a United States citizen. Thereafter, on April 18, 2003, eight days before his voluntary departure period expired, Barrios filed a motion to reopen his deportation proceedings with the BIA to allow for consideration (by the IJ) of his application for adjustment of status based upon his recent marriage.[4]

---

[4] Section 245 of the INA is the proper statutory framework for adjudicating an application for adjustment of status filed by an alien in deportation proceedings. Under section 245, an alien may be eligible for adjustment of status if, among other prerequisites, an immigrant visa is immediately available. 8 U.S.C. § 1255(a). One of the ways by which an alien may become eligible to receive an immigrant visa is through marriage to a United States citizen. 8 U.S.C. § 1151(b)(2)(A)(i). An approved I-130 filed by the spouse satisfies the requirement that a visa be immediately available. *INS v. Miranda*, 459 U.S. 14, 15 (1982).

However, approval of the I-130 petition does not automatically entitle the alien to adjustment of status. *INS v. Chadha*, 462 U.S. 919, 937 (1983) (citing *Menezes v. INS*, 601 F.2d 1028 (9th Cir. 1979)). While an I-130 establishes eligibility for adjustment of status, the Attorney General--or in the context of deportation proceedings, the IJ-- still has discretion to accord the status. 8 U.S.C. § 1255(a); *Agyeman v. INS,* 296 F.3d 871, 879 (9th Cir. 2002) (citing *Amarante v. Rosenberg*, 326 F.2d 58, 62 (9th Cir. 1964)).

When the BIA finally considered the motion to reopen on June 30, 2003, it denied the motion based on section 242B(e) of the INA, 8 U.S.C. § 1252b(e). That section prohibits an alien who has remained in the United States past the relevant period of voluntary departure from applying for an adjustment of status for a period of five years, absent a showing of exceptional circumstances for failing to depart. Inasmuch as Barrios remained in the United States beyond his voluntary departure date, the BIA determined that he was statutorily ineligible for an adjustment of status, notwithstanding his then-recent marriage to a United States citizen. *See* 8 U.S.C. § 1252b(e)(2)(A). The BIA relied heavily on its prior decision in *Matter of Shaar*, 21 I & N Dec. 541 (BIA 1996), *aff'd*, 141 F.3d 953 (9th Cir. 1998), which held that the pendency of a request for relief–in that case, a motion to reopen deportation proceedings filed just prior to the departure date–failed to constitute an "exceptional circumstance" justifying a failure to timely depart.[5]

---

[5] On July 30, 2003, Barrios also filed a motion to reconsider the BIA's June 30, 2003 order denying reopening. That motion was denied on September 26, 2003. Barrios, however, did not seek an extension of his voluntary departure period. We are aware that in *Shaar v. INS*, 141 F.3d 953, mention was made of the petitioners' failure to move to extend their voluntary departure period. Our result as expressed here does not require such a motion.

This Petition for Review followed.[6]

II.

Because Barrios was placed in deportation proceedings prior to April 1, 1997, and his final order of deportation was entered by the BIA after October 31, 1996, we have jurisdiction pursuant to 8 U.S.C. § 1105a(a), as amended by the transitional rules established by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"). *See Sandoval v. Reno*, 166 F.3d 225, 229-31 (3d Cir. 1999) (applying IIRIRA's transitional rules to jurisdiction).

We review the BIA's denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). We review the BIA's legal conclusions de novo, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles. *Abdulai v. Ashcroft*, 239 F.3d 542, 551-52 (3d Cir. 2001). We are also mindful of "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'" *INS v. St. Cyr*, 533 U.S. 289, 320 (2001) (quoting *INS v. Cardoza--Fonseca*, 480 U.S. 421, 449 (1987)).

III.

_____

[6] On March 16, 2004, the Alien Relative Petition (I-130) was approved by the immigration authorities.

Barrios argues that he is eligible for an adjustment of status based on his marriage to a United States citizen. He further argues that he filed the motion to reopen with the BIA in a timely manner, prior to his voluntary departure date, and that the administrative delay of the BIA in adjudicating his motion should not deprive him of the relief to which he is entitled. Insofar as *Matter of Shaar* compels a contrary conclusion, he argues that it should be rejected as a draconian and unreasonable interpretation of 8 U.S.C. § 1252b(e)(2)(A).

Inasmuch as Barrios's deportation proceedings commenced prior to the effective date of the IIRIRA, the governing statutory provisions are found in the now-repealed section 242B(e)(2)(A) of the INA,[7] which provides, in relevant part:

> [A]ny alien allowed to depart voluntarily under section 1254(e)(1) of this title or who has agreed to depart voluntarily at his own expense under section 1252(b)(1) of this title who remains in the United States after the scheduled date of departure, other than because of *exceptional circumstances*, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

[7] The IIRIRA repealed 8 U.S.C. § 1252b and replaced it with a new voluntary departure provision codified at 8 U.S.C. § 1229c.

-8-

INA § 242B(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996) (emphasis added). The relief that is unavailable due to a failure to voluntarily depart includes adjustment of status. *Id.* § 242B(e)(5)(C), 8 U.S.C. § 1252b(e)(5)(C) (repealed 1996). For purposes of the voluntary departure provisions, "[t]he term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." *Id.* § 242B(f)(2), 8 U.S.C. § 1252b(f)(2) (repealed 1996).

Here, the precise question is whether Barrios's timely filing of a motion to reopen deportation proceedings before his scheduled voluntary departure date constitutes the requisite "exceptional circumstances" to overcome the statutory bar. We conclude that it does, thereby rejecting the BIA's construction of the statute in *Matter of Shaar.*

We begin our discussion with *Matter of Shaar*, 21 I & N Dec. 541, a case involving substantially similar facts to those of the present appeal. There, after the completion of deportation proceedings, the INS granted the Shaars the privilege of voluntary departure. Three days prior to the expiration of their voluntary departure period, the Shaars moved to reopen their case in order to apply for suspension of deportation. By that time, they had accrued the requisite seven years to qualify for such relief. *See* 8 U.S.C. § 1254(a)(1) (repealed 1996).

However, the en banc BIA, in a 7-5 decision, with four strong separate dissenting opinions, held that an alien who has filed a motion to reopen during the pendency of a voluntary

departure period, but who subsequently remains in the United States after the scheduled date of departure, is statutorily ineligible for suspension of deportation pursuant to section 1252b, absent a showing that the alien's failure to depart timely was due to "exceptional circumstances." *Id.* at 548-49. The BIA further held that neither the filing of a motion to reopen during the pendency of a period of voluntary departure, nor the IJ's failure to adjudicate the motion prior to the expiration of the alien's voluntary departure period, constituted an "exceptional circumstance." *Id.* Accordingly, the BIA denied the Shaars' motion to reopen. *Id.*

The Ninth Circuit affirmed, in a 2-1 panel decision, finding no fault with the BIA's reading of the statute. *Shaar v. INS*, 141 F.3d 953, 956 (9th Cir. 1998). That court concluded that the language of the statute was unambiguous and evinced a congressional intent to "control untoward delays" in the immigration system. *Id.* In addition, the court acknowledged that Congress provided "a single escape from the strictures of the provision–exceptional circumstances." *Id.* at 957. That escape, however, was foreclosed because no such circumstances were present in the case. *Id.*

Of particular relevance here, the Ninth Circuit held that the mere filing of a motion to reopen does not constitute "exceptional circumstances" within the meaning of the statute. *Id.* Nor was the court impressed with the Shaars' claim that the hearing date scheduled for their request to reopen was beyond their control, and thus compelling. As the court stated, "[i]t was hardly exceptional that the IJ could not reach [the Shaars'] petition to reopen within the two or three days . . . which they

saw fit to give him." *Id.*

Although mindful of the deference normally due to the agency's interpretation of the INA, we cannot agree that *Matter of Shaar* is a permissible interpretation of the statute, at least insofar as the BIA narrowly construed the "exceptional circumstances" provision to exclude the good faith filing of a motion to reopen deportation proceedings within the voluntary departure period. Such an interpretation is unwarranted for two principal reasons. First, the statute does not define "exceptional circumstances" other than to provide that they should be at least as compelling as those caused by serious illness or the death of an immediate relative. *See* 8 U.S.C. § 1252b(f)(2). Second, and more importantly, the BIA's construction of the statute elevates and promotes the date of adjudication over the date of filing. We cannot agree that such a construction is reasonable and comports with congressional intent.

Judge Browning, who wrote in dissent in *Shaar*, went to great lengths to expose the flaws of the BIA's interpretation. *See Shaar*, 141 F.3d at 959-64 (Browning, J., dissenting). The dissent charged:

> [The majority's] interpretation ignores Congress'
> intent that aliens be permitted to file, and the
> Immigration and Naturalization Service . . . be
> required to hear, a single, timely-filed,
> meritorious motion to reopen; it treats similarly
> situated aliens in a disparate manner, and forces
> aliens to forgo congressionally-authorized relief
> or face a substantial penalty. It is both

-11-

unreasonable and arbitrary.

*Id.* at 959. The interpretation was unreasonable, Judge Browning argued, because it "rests on the premise that Congress intended to allow aliens to file certain motions to reopen, but to preclude immigration judges from hearing them." *Id.* (citing 8 U.S.C. § 1229a(c)(6); 8 C.F.R. § 3.2 (authorizing aliens to file motions to reopen)). It was arbitrary because it "assumes Congress intended that an alien's opportunity to obtain relief depend not on the merits of the alien's application, but on whether a randomly assigned tribunal happens to act on the motion within the alien's period of voluntary departure." *Id.* at 960.

The dissenting opinion noted another respect in which the majority's interpretation was arbitrary: the disparate treatment of appeals and motions to reopen. The BIA has preserved an alien's right to pursue a meritorious appeal without sacrificing the benefits of voluntary departure. *See Matter of Chouliaris*, 16 I. & N. Dec. 168, 170 (BIA 1977) (holding that an appeal from an immigration judge's decision tolls the voluntary departure period). "Yet the majority presents aliens with an even starker dilemma: Leave at the end of the voluntary departure period and thereby forfeit the right to suspension of deportation granted by Congress, or remain, forgo a hearing on the merits, and be precluded from relief for five years." *Shaar,* 141 F.3d at 960 (Browning, J., dissenting).[8] According to Judge

---

[8] Judge Browning also noted that "[t]he irrationality of allowing motions to reopen to be filed but not heard, and of

Browning, such disparate treatment lacks sufficient justification, especially in light of the shared "critical similarity – Congress has authorized both." *Id.*

IV.

We find the reasoning in the *Shaar* dissent persuasive. We thus hold that the failure of the immigration authorities to act on a legitimate application for relief filed within the voluntary departure period is an exceptional circumstance "beyond the control of the alien." 8 U.S.C. § 1252b(f)(2); *see Shaar*, 141 F.3d at 964 (Browning, J., dissenting). The loss of a legitimate claim for relief from deportation, based solely on

conditioning the grant or denial of relief on reasons unrelated to the merits also raises serious questions of due process and the equal protection of the laws." *Id.* at 961. These questions are troubling indeed, and lend further support to the conclusion that the BIA's interpretation in *Matter of Shaar* was unreasonable. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("Of course, the INS regulation must still meet the (unexacting) standard of rationally advancing some legitimate governmental purpose . . ."); *see also Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring, but in a context different from immigration) ("We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result.").

-13-

the INS's failure to act within the period in question, is, in our view, sufficiently compelling to invoke the exception provided in section 1252b(e)(2)(A). In so holding, we reject the reasoning of the Ninth Circuit in *Shaar v. INS*,[9] which affirmed *Matter of Shaar* as a permissible construction of section 1252b(e)(2)(A).[10]

We are satisfied that the critical date in this case is the date a motion to reopen is *filed* rather than the date it is *adjudicated* by the immigration authorities. Interpreting "exceptional circumstances," as we do, to include the loss of a

_____

[9] *See also Stewart v. U.S. INS*, 181 F.3d 587, 596 (4th Cir. 1999) (finding that filing of motion to reopen failed to constitute "exceptional circumstances"– based on "the persuasive reasoning" of *Shaar*); *Rojas-Reynoso v. INS*, 235 F.3d 26, 30 n.3 (1st Cir. 2000) (citing *Shaar* and *Stewart* and concluding that the "mere filing of a motion to reopen deportation proceedings does not itself constitute 'exceptional circumstances'"). Inasmuch as both the First and Fourth Circuits have found the Ninth Circuit's reasoning in *Shaar* persuasive, we likewise express our disagreement with those respective decisions.

[10] The Government contends this Court recently cited to *Matter of Shaar* with approval in *Bhiski v. Ashcroft*, 373 F.3d 363, 372 n.6 (3d Cir. 2004). While it is true that we have cited to *Matter of Shaar* as an example of a procedural bar justifying the BIA's denial of a motion to remand, we have never expressly adopted its holding. We refuse to do so here.

-14-

legitimate claim for relief from deportation based on no fault of the alien and on no intent to delay deportation is consistent with that understanding. Moreover, such an interpretation, as Judge Browning properly noted, would be "consistent with Congress' intent to allow aliens with valid claims to reopen their deportation proceedings, and would avoid the absurd, arbitrary, and likely unconstitutional results that will follow from the interpretation adopted by [the Ninth Circuit in *Shaar v. INS*]."[11] *Shaar*, 141 F.3d at 964 (Browning, J., dissenting).

V.

Our holding finds further support in a very recent decision from the Ninth Circuit, which revisited the same problem addressed in *Shaar*, albeit in the context of a different

---

[11] As this Court has observed, "a blind adherence to the literal meaning of a statute [could] lead to a patently absurd result that no rational legislature could have intended. Following the letter, rather than the spirit, of the law in such cases would go against the court's role of construing statutes to effectuate the legislature's intent." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002) (citing *United States v. Schneider*, 14 F.3d 876, 880 (3d Cir. 1994) ("It is the obligation of the court to construe a statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose.")). Because we adopt a broad interpretation of "exceptional circumstances," we depart from the holding reached by the majority in *Shaar* with which Judge Browning expressed disagreement.

-15-

statutory scheme. In *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005), the Ninth Circuit was dealing with the *post-IIRIRA* voluntary departure provision, 8 U.S.C. § 1229c(d), whereas here we deal with the *pre-IIRIRA* voluntary departure provision, 8 U.S.C. § 1252b(e)(2)(A). Although our holding must be limited to the pre-IIRIRA statutory scheme, and thus we express no opinion with respect to the post-IIRIRA provisions, we believe that the *Azarte* rationale is fully applicable here.

In *Azarte*, the Ninth Circuit, interpreting the post-IIRIRA voluntary departure provision, held "that in cases in which a motion to reopen is filed within the voluntary departure period . . . the voluntary departure period is tolled during the period the BIA is considering the motion." 394 F.3d at 1289. In reaching that holding, the court refused to apply *Shaar*, which concerned the *pre-IIRIRA* statute, 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996), to *post-IIRIRA* cases, stating that certain changes in both the statute and practice compelled a new interpretation. *Id.* at 1286-87.

Prior to the IIRIRA, the court noted, there was no statutory authorization for motions to reopen. With the enactment of the IIRIRA in 1996, motions to reopen were transformed from a regulatory to a statutory form of relief. *Id.* (citing 8 U.S.C. §1229a(c)(6)(A) (1996)). Quoting Judge Browning's dissent in *Shaar*, the court found it "absurd to conclude that Congress 'intended to allow motions to reopen to be filed but not heard.'" *Id.* (citing *Shaar*, 141 F.3d at 960 (Browning, J., dissenting)).

We agree that it is contrary to congressional intent to

allow aliens to file motions to reopen but afford them no reasonable opportunity to receive a ruling on the merits. The Ninth Circuit reached this conclusion only *after* the promulgation of the relevant statutory changes in the IIRIRA, focusing on a possible statutory conflict between the voluntary departure and motion to reopen provisions.

Contrary to *Azarte*, which was concerned primarily with the post-IIRIRA statutes,[12] we believe, as we have stated, that the *Azarte* result should obtain in the *pre-IIRIRA* context as well. This is because both statutory schemes implicate a deeper juridical problem, which results from placing greater emphasis on the date of adjudication rather than on the date of filing.

We thus conclude that the proper construction of the *pre-IIRIRA* voluntary departure provision requires that aliens be afforded a reasonable opportunity to receive a ruling on the merits of a timely-filed motion to reopen.[13]

---

[12] *See Azarte*, 394 F.3d at 1286-87.

[13]   As a final matter, we note that the new voluntary departure provision does not contain an "exceptional circumstances" exception. *See* 8 U.S.C. § 1229c(d). In *Azarte*, the Ninth Circuit thus construed § 1229c(d) so as to toll the voluntary departure period during the period the BIA is considering a timely-filed motion to reconsider. While we could have taken this same approach in interpreting the pre-IIRIRA voluntary departure provision, we believe that our broad construction of the "exceptional circumstances" exception is

-17-

## VI.

Accordingly, we will GRANT the Petition for Review of the BIA's decision, and remand this matter to the BIA for further proceedings consistent with this opinion.

---

more principled given the present circumstances. We recognize, however, that either construction would effectuate our position that the critical date here is the date of filing, not the date of adjudication.