

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2005

# Kanivets v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3569

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kanivets v. Atty Gen USA" (2005). *2005 Decisions.* Paper 491.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/491

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-3569, 03-4187 and 04-3164

OLEG KANIVETS,
                    Petitioner in 03-3569/4187

vs.

ALBERTO GONZALES,
Attorney General of the United States

Respondent in 03-3569/4187

_____

ON PETITIONS FOR REVIEW FROM ORDERS
OF THE BOARD OF IMMIGRATION APPEALS
DATED JULY 31, 2003 and OCTOBER 15, 2003
(BIA No. A77-554-283)

_____

OLEG KANIVETS

Appellee in 04-3164
                    vs.
BILL RILEY, as Regional Director Immigration and
Customs Enforcement Department of Homeland Security,
or his successor or Assigns; JOHN ASHCROFT,
Attorney General of the United States

Appellant in 04-3164

_____

INITIALLY DOCKETED AS AN APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PRIOR TO THE ENACTMENT OF THE REAL ID ACT OF
2006
(D.C. No. 03-cv-05377)

District Judge: Honorable Marvin Katz
_____
Argued July 15, 2005

Before:  SLOVITER, McKEE and WEIS, <u>Circuit</u> <u>Judges</u>.
_____

Filed: September 7, 2005
_____

Lawrence H. Rudnick, Esquire (ARGUED)
Steel, Rudnick & Ruben
1608 Walnut Street, Suite 1500
Philadelphia,  PA 19103

<u>Attorney for Appellee Oleg Kanivets</u>


Greg D. Mack, Esquire (ARGUED)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC   20044-0878

<u>Attorney for Appellant Bill Riley, as Regional Director</u>
<u>Immigration and Customs Enforcement Department of</u>
<u>Homeland Security, or His Successor or Assigns; John Ashcroft,</u>
<u>Attorney General of the United States</u>


_____

<u>OPINION</u>
_____

WEIS, Circuit Judge.

In this case the Board of Immigration Appeals denied a timely filed motion for rehearing on the ground that it was not decided until after the period for voluntary departure had elapsed. We conclude that the time allotted for departure is tolled pending a ruling on the motion and accordingly grant the petition for review.

Oleg Kanivets is a Russian Jew who is a citizen of Kyrgyzstan. He entered the United States on January 21, 1998 and was authorized to stay until January 20, 1999. He filed for asylum on August 2, 1999.

Kanivets contends that he suffered persecution in Kyrgyzstan based on his religion. He describes a pattern of threats and assaults that were ignored by the local police. In April 1997, Kanivets was assaulted by four Kyrgyz men who uttered an ethnic slur and threatened to kill him if he did not leave the country. He reported the assault to the police, but they told him that it was too minor an incident to investigate and advised him to leave for Israel if he was dissatisfied.

Kanivets alleged that the same four men assaulted him several months later and questioned why he had not gone to Israel. He suffered a concussion and was hospitalized for 20 days. Following that assault, Kanivets received several threatening phone calls from unidentified callers. His mother had previously received threatening notes after his sister moved to Israel in February 1997.

Kanivets testified that his supervisor and co-workers at the dental clinic where he worked harassed and threatened him. Discharged in May 1997, he alleged that he was denied further employment in Kyrgyzstan. Kanivets asserted that his family's apartment was ransacked after he departed for the United States. His mother reported the incident to the police, but they failed to investigate it. She entered the United States in April 1999.

The IJ denied Kanivets' application for asylum and withholding of removal, but granted a sixty-day period for voluntary departure. Holding that the application for asylum was untimely, the IJ's decision emphasized the lack of evidence to bolster Kanivets' claim of persecution. Based on this weakness in the petitioner's case, the IJ determined that Kanivets had failed to establish (1) that he qualified as a refugee, (2) that he was entitled

to withholding of removal and (3) that he faced a clear probability of torture if he returned to Kyrgyzstan.

According to the IJ, "[t]he objective evidence in this case fails to show that Jewish people in Kyrgyzstan suffer persecution either at the hands of the government of that country, or by groups that the government of that country is unable or unwilling to control." He noted that Jews have been emigrating from Kyrgyzstan in steady numbers, but attributed this to "animosity of the Kyrgyz against the Russian-speaking community, which includes most Jews."

In contrast to the lack of objective evidence of anti-Semitism, the IJ noted that:

> "Clearly, there had been instances of societal violence against those perceived as being "Russian" by the natives of Kyrgyzstan....The problem of Russians who remain in the former Soviet republics is well-known. . . . [Kanivets] went from being part of a favored minority that controlled the country, namely, the Russians, to being part of a despised minority. The long pent-up resentment of the natives of Kyrgyzstan has taken its toll in the country. But there is no objective basis for the respondent's subjective claim that he has been the victim of persecution in Kyrgyzstan because of his Jewish ethnicity. The problem, if any, arose from the fact that he was perceived to be part of the former Russian masters...Arguably, the respondent may have been the victim of societal violence based upon the perception that he was a member of the Russian-speaking minority..."

The IJ concluded that "there is insufficient evidence in this record to show that the government of Kyrgyzstan condones or instigates

persecution of those perceived to be Russians."

The IJ determined that Kanivets was removable as charged, denied the application for asylum and granted a sixty-day period for voluntary departure. The BIA affirmed on October 28, 2002 and provided an additional thirty-day period for voluntary departure.

On November 22, 2002, Kanivets filed timely motions to reopen the order of removal, for a stay of removal, and a remand for adjustment of status based on his alien worker certification and his employer's pending immigration petition. He also asked for a reinstatement of voluntary departure.

The BIA denied the motion to reopen on July 31, 2003, reasoning that petitioner was statutorily ineligible for adjustment of status because he had failed to depart the country before his period for voluntary departure had expired. On October 15, 2003, the Board denied the petitioner's motion for reconsideration. Kanivets petitioned for review in our Court on August 27, 2003 and October 23, 2003.

In the interim, on September 24, 2003, Kanivets filed a petition for habeas corpus in the United States District Court for Eastern District of Pennsylvania. That court granted relief and the government appealed.

The government (The Department of Homeland Security)[1] appeals the District Court's order granting habeas corpus relief and remanding the case to the BIA because of asserted legal errors in the proceeding.

The government argues (1) that the District Court erred in weighing the sufficiency of the evidence, (2) that the IJ's ruling that the application for asylum was untimely is unreviewable, and (3) that the denial of asylum was not within the jurisdiction of the District Court.

During our consideration of the two petitions for

---

1.

The Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002) eliminated the INS and transferred its enforcement functions to the Department of Homeland Security's Bureau of Immigration and Customs Enforcement.

review we learned that The Department of Homeland Security had appealed the District Court's habeas corpus order. We then consolidated all three matters and held oral argument.

After these appeals were taken, Congress enacted the "Real ID Act" amending 8 U.S.C. § 1252, Pub. L. No. 109-13, 119 Stat. 2331 (2005) signed into law May 11, 2005 and effective on that date. The Real ID Act, *inter alia*, shifted certain immigration disputes formerly raised through habeas corpus in the district courts to the courts of appeals and converted them into petitions for review. Subsection (a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section."[2]

In the case before us, the petition for habeas corpus was filed at a time when the District Court had jurisdiction over the matter. Because it became effective on the date of enactment, the Real ID Act applies to this appeal. See Papageorgiou v. Gonzales, ___ F.3d ___, No. 04-3135, 2005 WL 1490454 (3d Cir. June 24, 2005). In Bonhometre v. Gonzales, ___ F. 3d ___, No. 04-2037, 2005 WL 1653641, at *2 (3d Cir. July 15, 2005), we noted that under the Real ID Act, cases pending in the district courts on the date of enactment were to be converted to petitions for review and transferred to the courts of appeals.

The Real ID Act, however, is silent as to habeas corpus petitions that were on appeal at the time of enactment. In resolving that procedural gap, we concluded that such appeals should be converted to petitions for review and retained by this Court. See id. at *2; see also Kamara v. Department of Homeland Security, No. 04-2647 (August 18, 2005). Therefore, the current proceeding consists of three petitions for review.

---

2.
Kanivets was deemed removable under 8 U.S.C. § 1227(a)(1)(B) as an alien present in the United States in violation of law, and the IJ denied his application for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3). The exceptions found in 8 U.S.C. § 1252(e) relate to orders under 8 U.S.C. § 1225(b)(1) and are thus inapplicable here.

One issue that is potentially dispositive is presented by two of the petitions, those originally complaining of the BIA's failure to rule on petitioner's request for reopening and the consequent failure to rule on the merits of his alien worker permit as a basis for adjustment of status.

After the BIA's original ruling, Kanivets had a statutory right to request a reopening of his case. See 8 U.S.C. § 1229a(c)(7); see also 8 C.F.R. § 1003.2(c). He did so on November 22, 2002, within the thirty-day period that the BIA had allotted for the privilege of voluntary departure. In his petition, Kanivets cited the fact that his employer had filed a pending immigrant petition for alien worker with the INS.

In denying the petition for rehearing, the BIA wrote, "[w]e find that the respondent is statutorily ineligible to apply for adjustment of status at the present time as a result of his failure to depart the United States prior to the expiration of his period of voluntary departure." The BIA cited 8 U.S.C. § 1229c(d) and Matter of Shaar, 21 I. & N. Dec. 541 (BIA 1996), aff'd 141 F.3d 953 (9th Cir. 1998).

In Matter of Shaar, the BIA decided that the filing of a motion for reopening during the period of voluntary departure was not an "exceptional circumstance" that allows grant of discretionary relief. In denying Kanivets petition for reconsideration here, the BIA elaborated, ". . . an alien who fails to depart following a grant of voluntary departure, and who has been informed of the penalties in section 240B(d) . . . is ineligible for a period of 10 years for certain forms of discretionary relief, including adjustment of status."

Under the BIA ruling, the result is that an alien who does not leave the United States within the time specified in the grant of voluntary departure is not entitled to adjustment of status. On the other hand, if the alien leaves the country within the period allowed for voluntary departure, he forfeits his motion to reopen. 8 C.F.R. § 1003.2(d).[3]

_____

3.
8 C.F.R. § 1003.2(d) provides, in pertinent part, that:

Any departure from the United States, including the deportation

Thus, the statutory and regulatory provisions produce a significant conundrum. By statute, an alien is entitled to file one motion to reopen proceedings within 90 days of the entry of an order of removal. 8 U.C.S. § 1229a(c)(7)(A), (c)(7)(C)(i).[4] An alien may timely file a petition for reopening, but if the BIA does not decide the petition within the period for voluntary departure, the alien loses the right to have a ruling.

This "Catch-22" situation was discussed at some length in Azarte v. Ashcroft, 394 F.3d 1278 (9th Cir. 2005). After a review of the statutory and regulatory provisions, the Court of Appeals observed that in Matter of Shaar, 21 I. & N. Dec. 541, the BIA held that the practice of extending the time for voluntary departures was terminated by enactment of a statute that restricted such extensions. 8 U.S.C. § 1229a(c)(7). See Azarte, 394 F.3d at 1286.

Before enactment of the statute, the practice had been to extend voluntary departure freely so that the BIA would have time to rule on reopening before the alien would have been required to depart. See id. at 1286-87. Moreover, the period allowed for voluntary departure had been more generous than that set out in the statute. See id. at 1287.

The Azarte Court opined that it was absurd to believe that Congress, in providing for petitions to reopen, would intend to preclude their adjudication by invocation of the voluntary departure limitation. See id. at 1288-89. Accordingly, the Court held that a timely petition for reopening in conjunction with a request for stay of removal or voluntary departure tolls the period of voluntary departure during the time during which the BIA considers the motion. See id. at 1289.

The Court of Appeals for the Tenth Circuit in

---

or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

4.
A number of exceptions not relevant to this discussion are listed in the statute.

Sidikhouya v. Gonzales, 407 F.3d 950 (10th Cir. 2005), also rejected the BIA's Shaar approach. That Court held in agreement with Azarte that an alien must be afforded an opportunity to receive a ruling on the merits of a timely filed petition to reopen.

We had the occasion to confront a similar problem in Barrios v. Attorney General of the United States, 399 F.3d 272 (3d Cir. 2005). In that case, the BIA denied a timely motion to reopen because the period for voluntary departure had elapsed before the motion was adjudicated on the merits. See Barrios, 399 F.3d at 273-74. Barrios involved 8 U.S.C. § 1252b(e)(2)(A) (repealed 1996), the predecessor to section 240B(d) of the INA, 8 U.S.C. § 1229c(d), so it is not precisely the text before us at the present time. See id. at 274-75. In Barrios, as in Matter of Shaar, the applicable statute provided that in the absence of "exceptional circumstances" an alien who overstays his voluntary departure date was not eligible for discretionary relief for a period of five years.

Barrios rejected the reasoning of Matter of Shaar and held that "the failure of immigration authorities to act on a legitimate application for relief filed within the voluntary departure period [was] an exceptional circumstance... ." Id. at 277. We decided that the day that the motion was filed was the critical beginning point, rather than the date of adjudication. See id. Barrios also commented favorably on the Azarte reasoning, although that case addressed the current statute, which does not speak of "exceptional circumstances."

In Bhiski v. Ashcroft, 373 F.3d 363 (3d Cir. 2004), we cited Matter of Shaar in a case where the alien asked for an adjustment of status. That case, however, is clearly distinguishable because the motion to remand was filed after the period of voluntary departure had expired. See Bhiski, 373 F.3d at 366.

Reynoso-Lopez v. Ashcroft, 369 F.3d 275 (3d Cir. 2004) is also distinguishable. There, the issue was whether we had authority to reinstate a grant of voluntary departure and extend the departure date. See Reynoso-Lopez, 369 F.3d at 277. We concluded that the Court had no jurisdiction to issue such an order. See id. That is a different situation from that presented here where we hold that tolling applies during the period of time that the BIA deliberates on a timely motion to reopen.

Because a favorable disposition of Kanivets' motion

may result in his being granted a visa, we need not rule on the merits of the appeal from the grant of habeas corpus. At oral argument, counsel for the petitioner conceded that if reopening were granted the habeas corpus claim would be moot. Counsel for the government stated that it is quite possible that a visa may be available for Kanivets at this time. Given the strong possibility that Kanivets will prevail on his application for reopening, it is likely that the substantive claims underlying his habeas petition will become moot.

Accordingly, we will deny the petition for review in Case No. 04-3164 (formerly the habeas petition) without prejudice as moot. See Nationwide Mut. Ins. Co. v. Burke, 897 F.2d 734, 740 (4th Cir. 1990) (district court could dismiss case without prejudice as moot, but based on the outcome of a related state court action, plaintiff's claim might no longer be moot and it could file a new case). If the motion for reopening is granted on remand, the BIA could also re-examine whether the IJ (1) improperly rejected Kanivets' claims for lack of sufficient corroboration and (2) raised, and then rejected, the possibility that Kanivets' had a well-founded fear of persecution based on his Russian ethnicity, or a combination of nationality and religion.

Accordingly, we hold that because Kanivets timely filed his petition for reopening, the BIA should decide his motion for reopening on the merits.

The petitions for review in cases docketed at 03-3569 and 03-4187 will be granted. The petition for review at docket 04-3164 will be denied as moot without prejudice.