

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2007

# Bhawra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1068

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Bhawra v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1068

_____

JASBIR SINGH BHAWRA,

Petitioner

v.

*ALBERTO R. GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent.

*(Substituted pursuant to Rule 43 (c), F.R.A.P.).

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A76 122 767)

_____

Submitted under Third Circuit LAR 34.1(a)
on September 29, 2006

BEFORE: RENDELL, ROTH and GIBSON*,  Circuit Judges

(Opinion filed: February 27, 2007)

_____

*The Honorable John R. Gibson, U.S. Circuit Judge, Eighth Circuit, sitting by designation.

OPINION

**ROTH**, Circuit Judge:

Jasbir Singh Bhawra petitions this Court to review the final order of the Board of Immigration Appeals (BIA or Board) affirming the denial of Bhawra's petitions for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and denying Bhawra's motion to reopen and remand for consideration of an adjustment of status application. Bhawra also seeks review of the Board's order denying his second motion to reopen and remand. We will deny Bhawra's petition because substantial evidence in the record supports the Immigration Judge's conclusions that Bhawra was not credible or entitled to relief from removal, and the Board did not abuse its discretion in denying Bhawra's motions to reopen.

## I. **BACKGROUND**

Bhawra is a Punjabi Sikh and professional musician. In India, he was married with three children. As part of a musical tour, Bhawra entered the United States on April 27, 1998 on a non-immigrant cultural visa. Although Bhawra's family remained in India, he overstayed his visa. Approximately one year later, Bhawra filed an application for asylum, supported by two separate and sometimes inconsistent declarations. On January 13, 2000, at a hearing before an immigration judge (IJ) in New Jersey, Bhawra conceded removability but alleged past persecution and asserted he would be tortured by the Punjabi police should

2

he be removed to India. The judge found Bhawra's story incredible and, even if true, insufficient to warrant asylum, withholding of removal, or CAT relief. By oral decision, the judge denied Bhawra's application but permitted him voluntary departure.

Bhawra appealed to the BIA. While the appeal was pending, Bhawra's wife in India divorced him. Two months later, Bhawra married an American citizen. The new wife filed an immediate relative petition and Bhawra filed his own an application for adjustment of status. The BIA construed these filings as a motion to reopen and remand, and, finding no evidence of a bona fide marriage (i.e. not for immigration purposes), denied the motion. In the same order, dated November 6, 2002, the Board affirmed, without opinion, the Immigration Judge's oral decision, and also granted Bhawra voluntary departure within 30 days.

Bhawra petitioned for review in the Second Circuit, rather than in this Court. He also filed a second motion to reopen with the BIA, which the Board again denied, and which Bhawra petitioned for review in the Second Circuit. Eventually, Bhawra's timely petitions were consolidated and transferred to this Court. Bhawra filed a request for stay of removal, and on February 10, 2005, we denied it.

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have appellate jurisdiction under 8 U.S.C. § 1252.


## II. DISCUSSION

When the BIA summarily affirms an IJ's decision, as in this case, we review the

3

judge's decision as if it were the decision of the Board. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Board determinations are upheld if they are supported by substantial evidence, INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992), which is an "extraordinarily deferential" standard of review. Abdulrahman v. Ashcroft, 330 F.3d 587, 598 (3d Cir. 2003). We will reverse only if "the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481, n.1 (emphasis in original).

We review the Board's denial of a motion to reopen for abuse of discretion, Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005), which occurs if that decision was "arbitrary, irrational, or contrary to law." Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994).

## A. Asylum

To be eligible for asylum an alien must be "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioner bears the burden of establishing that he falls within this statutory definition. Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). Although asylum may be granted solely on the credible testimony of the applicant, corroboration may be required where it is reasonable to expect such proof and there is no satisfactory explanation for its absence. Chen v. Gonzales, 434 F.3d 212, 217-18 (3d Cir. 2005). An IJ's adverse credibility finding may be supported by inconsistencies and omissions in the applicant's testimony, provided those discrepancies "involve the 'heart of the asylum claim.'" Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citation omitted).

4

Bhawra seeks asylum because of alleged police abuse in the state of Punjab, India. He supported his asylum application with two different, and sometimes inconsistent, written declarations, and his testimony at the January 13, 2000 hearing. Very few corroborating documents were submitted. Bhawra alleges that on January 28, 1996, a rogue member of the Punjabi police department, Deputy Superintendent Swaran Singh, shot and killed a musician, Dilshad Akhtar, as he performed on stage. Bhawra and his fellow musicians were outraged, so they allegedly formed a committee, chose Bhawra as it leader, and, as a group, protested the killing of Akhtar, lobbied for murder charges to be brought against Singh, and supported a key eyewitness, named "Mattoo," to ensure that he would testify. Bhawra alleges that, as a result of his involvement in this group, he was the victim of police abuse on two different occasions.

Bhawra alleges that, on February 3, 1997, he was attempting to escort Mattoo to court to testify against Singh and, for this reason, was stopped by the Punjabi police, stripped naked, beaten with sticks and straps, and taken into custody. Bhawra alleges that he was released later that day, after paying a substantial bribe, and that the police ordered him to stop supporting the case against Singh; they threatened to bring false charges against him if he did not comply. Two months later, Bhawra traveled to the United States to participate in a Sikh musical festival in the Bronx. The following month, with the case against Singh still pending, Bhawra voluntarily returned to India, allegedly because he feared for the safety of his wife and children in India.

Shortly after Bhawra's return, the police allegedly took him into custody a second

5

time. Bhawra alleges this happened because, the previous day, he had disobeyed their orders by escorting Mattoo to court. Although his written declarations are inconsistent on this point, Bhawra testified that the police then tortured him mercilessly with wooden and electrical torture devices, threatened to kill him, charged him with harboring and sheltering militants, and detained him for nine months. Bhawra testified that, despite the police intimidation, Mattoo testified against Singh at trial, but that Singh was nevertheless acquitted. Bhawra testified that he was finally released after the charges against him were dropped for lack of evidence. A few months later he fled India for the United States and has not returned since.

The Immigration Judge rejected Bhawra's asylum application because he found Bhawra's testimony incredible. The judge pointed out that Bhawra's three historical accounts – his two written declarations and his oral testimony – were inconsistent and at times contradictory. Furthermore, the judge noted that Bhawra failed to produce any supporting documents corroborating his story, even though it was reasonable to expect at least some documentation related to the various public events at issue – Akhtar's killing on stage, the musicians' subsequent public protests, Singh's trial and acquittal, and Bhawra's own detention and acquittal. The judge noted that Bhawra failed to satisfactorily explain why such documents (e.g., newspaper clippings, court records, medical records, or third-party affidavits) were absent in light of Bhawra's frequent contact with his family in India and the ample time with which he had to gather corroborating evidence.

The Immigration Judge also noted that, even if Bhawra's story was to be believed in its entirety, Bhawra could not establish statutory eligibility for asylum (or withholding of

6

removal or CAT relief). The judge noted that Bhawra was a target not because of his race, religion or political views, but rather because he took steps to support the prosecution of a single police officer. Since the trial at issue resulted in the officer's acquittal, there could be no credible fear of future police abuse because the precipitating factor had ceased to exist.

Bhawra argues on appeal that the Immigration Judge failed to arrive at an explicit credibility finding because the judge conflated the issues of credibility and statutory eligibility. Although it is unclear from his brief, Bhawra apparently makes this argument because "we proceed as if the alien's testimony was credible" if "the IJ did not make an adverse credibility determination." Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir. 2003).[1] This first argument can be easily dismissed, however, in light of the judge's clearly separate analyses and his explicit statement that "I do not believe [Bhawra's] story."

Next, Bhawra argues that, to the extent the judge made an adverse credibility finding, that finding was not supported by substantial evidence. Bhawra argues that the judge engaged in impermissible speculation, failed to identify material inconsistencies, and improperly focused on the absence of corroborating evidence. We find the opposite to be true, however. For example, with regard to Bhawra's second arrest and subsequent detention – his main reason for permanently fleeing India – the judge noted that there were material inconsistencies in Bhawra's story. The judge pointed out that Bhawra's first declaration

---

[1] It is worth noting that Bhawra's opening brief contains citations to mostly Ninth Circuit case law, even for unremarkable legal principles that have also been enunciated by this Court. Bhawra's counsel would have served him better by citing to Third Circuit case law and other binding precedent instead of the non-binding authority from the Ninth Circuit.

states that, after his second arrest, he was "taken to the police station and beaten and tortured like before" (referring to his first arrest), and does not mention any time spent in jail afterwards. However, Bhawra's second declaration – filed a month later through counsel – described the second arrest in much different terms by detailing the brutal torture he endured for *five days,* followed by *nine months* detention. As the judge noted, this torture and detention was not "like before" – it was far more severe than the short-lived beatings and detention he endured after his first arrest. The judge asked Bhawra about these material inconsistencies, and justifiably rejected Bhawra's suggestion that they were due to interpreter error.

The judge also pointed out other relevant inconsistencies relating to the charges brought against Bhawra, the circumstances of his release after the second arrest, and the extent of his involvement with Mattoo after the first arrest, all of which were material to the Bhawra's eligibility for asylum, withholding of removal, or CAT relief. In light of these material inconsistencies in Bhawra's testimony, we find that it was entirely appropriate for the Immigration Judge to ask for corroborating evidence or an explanation as to why it is missing, and to hold it against Bhawra when he could provide none.

Because we find the Immigration Judge's adverse credibility finding to be supported by substantial evidence, we need not address Bhawra's argument that his testimony – if taken to be true – establishes statutory eligibility for asylum.[2]

---

[2] Nonetheless, we note our agreement that the evidence in the record fails to establish statutory eligibility for asylum based on race, religion, nationality, or political opinion, and

**B. Withholding of Removal**

The "Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be eligible for withholding, an alien must demonstrate "a clear probability" of persecution upon return to his home country. INS v. Cardoza-Fonseca, 480 U.S. 421, 425 (1987). This standard is more stringent that the "well-founded fear" of persecution standard required for asylum. Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).

Because we sustain the Immigration Judge's adverse credibility finding and denial of asylum, we also sustain the denial of withholding of removal. Id. at 48 ("[S]o long as the Board correctly denied Janusiak's application for asylum, its denial of the application for withholding of deportation will also be proper.")

**C. Convention Against Torture**

To qualify for CAT protection, an alien "bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005) (citation omitted). "[M]ore likely than not" is a more stringent standard than the "well-founded fear" required for asylum. Abdulrahman v. Ashcroft, 330 F.3d 587, 591-92 & n.2 (3d Cir. 2003). "Unlike with

---

probably also fails to establish eligibility based on membership in a particular social group.

9

asylum or withholding of removal, an alien seeking relief under the CAT need not establish that . . . torture is inflicted 'on account of' any protected status." Silva-Rengifo v. U.S. Att'y Gen., 473 F.3d 58, 64 (3d Cir. 2007).

Rejection of an asylum application on credibility grounds does not necessarily defeat a claim for CAT protection that is based on factual allegations independent of the asylum claim. See Berishaj v. Ashcroft, 378 F.3d 314, 332 (3d Cir. 2004). But an adverse credibility ruling is dispositive where, as here, the alleged facts on which the alien bases the CAT claim are the same as those underlying the asylum application. See Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). We therefore sustain the denial of CAT relief.

**D. Motions to Reopen**

The BIA denied two motions to reopen and remand premised on Bhawra's marriage to an American citizen in August 2002. The first motion was accompanied by, among other things, the couple's marriage certificate, their passports and identification cards, the American citizen's tax returns, the death certificate of her former husband, her immediate relative petition for Bhawra's adjustment of status, and Bhawra's ex-wife's divorce papers from two months prior. The Board construed this submission as a motion to reopen and remand for adjustment of status based on a marriage entered into after commencement of proceedings. Such a motion *may* be granted where the following factors are present:

(1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by Matter of Shaar, 21 I. & N. Dec. 541 (BIA 1996) [(holding alien who remains in U.S. beyond voluntary departure date is

10

statutorily ineligible for suspension of deportation, notwithstanding his proper filing of motion to reopen prior to voluntary departure date and agency's failure to rule on that motion before that date)], or on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the [alien's] marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on Matter of Arthur . . . .

Bhiski v. Ashcroft, 373 F.3d 363, 371 (3d Cir. 2004) (bracketed parenthetical added) (quoting In re Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002)).

Because the Board found no evidence of a bona fide marriage – specifically, "no evidence of joint ownership or property, joint tenancy of a common residence, commingling of financial resources, or affidavits from knowledgeable third parties as to the legitimacy of the marriage," App. at 44 (citing 8 C.F.R. § 204.2(a)(1)(iii)(B) (such evidence establishes a bona fide marriage)) – Bhawra's motion was denied. We conclude that it was well within the Board's discretion to do so under these circumstances.

Undeterred, Bhawra filed a second motion to reopen with additional documentation, including records showing a joint bank account, a letter from a landlord stating that the couple was cohabitating, several affidavits attesting that the couple's marriage was bona fide, and two receipts for jewelry purchases made out in the wife's name. However, because Bhawra failed to depart the country within the voluntary departure period – thus failing to satisfy the third Velarde-Pacheco factor cited above, premised on Matter of Shaar – the

11

Board denied Bhawra's motion based on this procedural deficiency.

Bhawra challenges this decision by making several interrelated arguments of dubious merit. First, he asserts his timely filing of a petition for review in the Second Circuit (the wrong court of appeals) should have been construed by the BIA as a request for stay of voluntary departure (which actually should have been lodged with the District Director), which, had it been granted, would have rendered the Velarde-Pacheco factor premised on Matter of Shaar inapplicable. By way of post-briefing motion, Bhawra buttresses this argument by citing to Obale v. U.S. Att'y Gen., 453 F.3d 151, 157 (3d Cir. 2006), where we held that the court of appeals has equitable jurisdiction to stay the voluntary departure period. Second, Bhawra points out, by post-briefing motion, that Matter of Shaar has since been discredited by Barrios v. U.S. Att'y Gen., 399 F.3d 272, 276 (3d Cir. 2005) (expressly disagreeing with Matter of Shaar) and Kanivets v. Gonzales, 424 F.3d 330, 335 (3d Cir. 2005) (similar), and argues that the Board abused its discretion by applying now-incorrect law. Finally, Bhawra argues that a recent change in factual circumstances – i.e. the United States Customs and Immigration Services's (USCIS) approval of Bhawra's wife's immediate relative petition for adjustment of status– automatically renders his marriage bona fide and warrants a remand to the BIA.

Taking the last argument first, we note that recent factual developments outside the administrative record are irrelevant to the issue before us, i.e., whether the BIA abused its discretion by denying Bhawra's second motion to reopen based on the record before the

12

Board at the time.[3]  Next, although we agree that <u>Matter of Shaar</u> has been discredited since May 2, 2003 (when the Board denied Bhawra's second motion based on <u>Shaar</u>), we note that <u>Shaar</u>, <u>Barrios</u> and <u>Kanivets</u> are distinguishable from the instant case.  Each of those cases dealt with aliens who timely filed motions to reopen *prior* to their voluntary departure dates, whereas Bhawra filed his second motion to reopen *after* his voluntary departure date.  (In making this observation, we reject Bhawra's unsupported and convoluted argument that his voluntary departure date should have been tolled by his petition for review in the Second Circuit, the wrong court of appeals.)  Consequently, <u>Barrios</u> and <u>Kanivets</u> – which generally stand for the proposition that an alien's voluntary departure date is suspended pending the adjudication of his motion to reopen filed prior to that date – do not change <u>Shaar</u>'s general observation that an alien who fails to depart the United States before his voluntary departure date is statutorily ineligible to seek various forms of relief, including adjustment of status. <u>See</u> 8 U.S.C. § 1229c(d)(1)(B).  Because Bhawra was not prejudiced by the passage of time resulting from the BIA's consideration of his second motion to reopen – Bhawra was already statutorily ineligible for relief when he filed it – the Board did not abuse its discretion by denying that motion based on <u>Shaar</u> and § 1229c(d).[4]

---

[3] In any case, Bhawra's argument that the USCIS's approval of his wife's petition automatically renders his marriage bona fide is without merit; to conclude otherwise would improperly limit the discretion of the Attorney General.

[4] Additionally, the Board had two other procedural bases for denying Bhawra's motion. First, Bhawra's second motion to reopen was just that – his second – which violated 8 C.F.R. § 1003.2(c)(2): "a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge)."  Second, Bhawra failed

13

## III. **CONCLUSION**

For the reasons set forth above, we will deny the petition for review, and we will deny as moot Petitioner's Motion for Leave to Supplement and Respondent's Motion to File Amended Pleadings.

---

to show that his newly-added evidence was in fact new, which violated the purpose of 8 C.F.R. 1003.2(c)(1): "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Bhawra offered no proof that the newly submitted materials were unavailable at the time of his first submission; in fact, the dated materials prove just the opposite.