PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTOPHER MENSAH DEKOLADENU,
  *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
  *Respondent.*

No. 04-2164

CHRISTOPHER MENSAH DEKOLADENU,
  *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
  *Respondent.*

No. 05-1737

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A78-354-375)

Argued: March 16, 2006

Decided: August 18, 2006

Before MOTZ, KING, and GREGORY, Circuit Judges.

Petition for review denied by published opinion. Judge Motz wrote the opinion, in which Judge King concurred. Judge Gregory wrote a separate opinion concurring in the judgment.

**COUNSEL**

**ARGUED:** Randall Lee Johnson, JOHNSON & ASSOCIATES, Arlington, Virginia, for Petitioner. Carol Federighi, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, M. Jocelyn Lopez Wright, Assistant Director, UNITED STATES DEPART-MENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

An Immigration Judge (IJ) denied Christopher Mensah Dekoladenu's motion to reopen removal proceedings and also denied his subsequent motion to reconsider that decision. The Board of Immigration Appeals (BIA) affirmed, finding that Dekoladenu was ineligible for relief because he had overstayed his voluntary departure date. Dekoladenu petitions for review, arguing that his timely filed motion to reopen should have tolled the voluntary departure period. For the reasons set forth below, we deny Dekoladenu's petition for review.

I.

Dekoladenu is a citizen of Ghana who entered the United States on a six-month non-immigrant visa in 1998. He applied for asylum and withholding of removal in June 2000. Two months later, the Immigration and Naturalization Service ordered Dekoladenu to appear at removal proceedings. Dekoladenu conceded removability but indicated that he intended to file applications for "political asylum, withholding of removal, adjustment of status . . . , and alternatively, voluntary departure."

On September 6, 2002, Dekoladenu's employer successfully applied for an Alien Employment Certification; this certification is a prerequisite for an employer seeking a work visa on an alien's behalf.

*See* 8 U.S.C. § 1153(b)(3)(C) (2000). Dekoladenu's employer then filed an I-140 "Immigrant Petition for Alien Worker" on his behalf on December 26, 2002. On the same day, Dekoladenu filed an I-485 "Application to Register Permanent Residence or Adjust Status." Dekoladenu then brought motions asking the IJ to either adjourn and continue or terminate the removal proceedings in light of his pending applications. On March 6, 2003, the IJ found Dekoladenu removable, implicitly denying both motions; the IJ granted Dekoladenu a voluntary departure date of July 7, 2003.

On July 7, 2003 — the last day of his voluntary departure period — Dekoladenu filed a motion to reopen proceedings seeking adjustment of status in light of his pending I-140 and I-485 petitions. The IJ denied the motion to reopen. Dekoladenu then filed a motion to reconsider the denial of the motion to reopen. The IJ denied this motion as well. The BIA affirmed the decision of the IJ denying Dekoladenu's motion to reopen.[1]

Before us, Dekoladenu argues that the BIA (1) abused its discretion in refusing to stay his voluntary departure date while considering his motion to reopen, and (2) violated his due process rights by denying him a decision on his motion to reopen. We review the BIA's decisions on these questions of law *de novo*. *See Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir. 1993).

## II.

Dekoladenu first argues that the BIA abused its discretion when it rejected his argument that his motion to reopen tolled the voluntary departure period.[2] The BIA denied Dekoladenu's appeal on the

---

[1]While Dekoladenu's petition for review was pending, the Government moved to remand this case to the BIA to determine whether Dekoladenu had received proper notice about the consequences of failing to depart voluntarily, as required by 8 U.S.C. § 1229c(d) (2000). We granted the Government's motion to remand. On June 9, 2005, the BIA held that Dekoladenu received proper notice and reaffirmed the denial of reconsideration. Dekoladenu again petitioned for review of the BIA's reaffirmance on the same grounds that he raised in his earlier petition.

[2]Dekoladenu also argues that the IJ's denial of his motion to reopen was an abuse of discretion. He maintains that the IJ should have granted

ground that Dekoladenu became ineligible for adjustment of status when he remained in the United States after the expiration of his voluntary departure period.

Dekoladenu asserts that the BIA's interpretation of the relevant statutes constitutes an abuse of discretion. Prior to analyzing the BIA's construction, however, we must first determine "whether Congress has directly spoken to the precise question at issue." *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). "If Congress's intention is clear, the inquiry ends there." *Id.* Only if a statute is silent or ambiguous do we need to determine whether the BIA's interpretation is reasonable in light of the statute. *See Chevron*, 467 U.S. at 843. Accordingly, we turn to the statutes at issue here.

Removal proceedings are governed by 8 U.S.C. § 1229a (2000). This statute gives aliens the right to file one motion to reopen in order to present new facts or evidence. Section 1229a provides that "the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." *Id.* § 1229a(c)(6)(C)(i). However, the regulations implementing this statute provide that "[a]ny departure from the United States . . . occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion." 8 C.F.R. § 1003.2(d) (2006).

Another statutory provision, 8 U.S.C. § 1229c, governs voluntary departure and allows an IJ to grant an alien the right to depart voluntarily "in lieu of being subject to proceedings under section 1229a."

---

his motion to reopen based on the concurrent filing rule, which allows aliens to request adjustment of status as long as a visa is "immediately available." *See* 8 C.F.R. § 245.2(a)(2)(i)(A) (2006). However, this question is not before us, as Dekoladenu did not appeal the IJ's denial of his motion to reopen. Rather, this case arises from the BIA's rejection of Dekoladenu's motion to reconsider the IJ's denial of his motion to reopen. The BIA affirmed the denial of the motion to reconsider solely on the ground that Dekoladenu overstayed his voluntary departure date, and our review is thus limited to that issue.

*Id.* § 1229c(a)(1). This statute states that, if an eligible alien requests voluntary departure *prior* to the completion of removal proceedings, as Dekoladenu did here, "permission to depart voluntarily . . . shall not be valid for a period exceeding 120 days."[3] *Id.* § 1229c(a)(2)(A). An alien who fails to depart "within the time period specified" must pay a fine between $1,000 and $5,000 and will be ineligible for several forms of relief, including adjustment of status. *See id.* § 1229c(d).

This case highlights the difficulty sections 1229a and 1229c create for aliens granted voluntary departure. "An alien may timely file a [motion to reopen], but if the BIA does not decide the [motion] within the period for voluntary departure, the alien loses the right to have a ruling [on his motion to reopen]," whether he complies with the voluntary departure period or not. *Kanivets v. Gonzales*, 424 F.3d 330, 334 (3d Cir. 2005). As a practical matter, the BIA will rarely reach a decision on a motion to reopen before the end of the voluntary departure period. Thus, most aliens who are granted voluntary departure have no meaningful ability to file a motion to reopen when they are seeking one of the forms of relief listed in § 1229c(d).

For this reason, Dekoladenu asserts that we should interpret these two provisions so that a timely filed motion to reopen tolls the relevant voluntary departure period. We cannot agree. As discussed below, both the plain language of the statute and clear congressional intent explicitly limit the time allowed for voluntary departure and do not allow for judicial tolling of these limits.

In support of his tolling argument, Dekoladenu cites cases from other circuits that have adopted his interpretation of the statutory scheme. In *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005), the Ninth Circuit held that "in cases in which a motion to reopen is filed within the voluntary departure period . . . the voluntary departure

---

[3]The voluntary departure period for aliens who request voluntary departure at the conclusion of removal proceedings "shall not be valid for a period exceeding 60 days." 8 U.S.C. § 1229c(b)(2) (2000). Because the IJ gave Dekoladenu a 120-day voluntary departure period, we focus our analysis on section 1229c(a)(2)(A). We believe, however, that the two types of voluntary departure implicate the same principles.

period is tolled during the period the BIA is considering the motion."**4** *Id.* at 1289. The Third, Eighth, and Eleventh Circuits have followed the Ninth Circuit's approach. *See Ugokwe v. U.S. Att'y Gen.*, ___ F.3d ___, 2006 WL 1752339 at *5 (11th Cir. June 28, 2006); *Kanivets*, 424 F.3d at 334-35; *Sidikhouya v. Gonzales*, 407 F.3d 950, 951-52 (8th Cir. 2005). *But see Banda-Ortiz v. Gonzales*, 445 F.3d 387, 391 (5th Cir. 2006) *petition for rehearing en banc denied*, ___ F.3d ___, 2006 WL 2061132 (5th Cir. July 26, 2006) (holding by a divided panel that a motion to reopen does not toll the voluntary departure period).

Before the *Azarte* court turned to interpreting the statute at issue here, it provided a helpful overview of the history of voluntary departure and motions to reopen. *See* 394 F.3d at 1282-85. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* Pub. L. No. 104-208, 110 Stat. 3009-546. Prior to IIRIRA, federal law provided for voluntary departure but imposed no specific time limits on the voluntary departure period. *See* 8 U.S.C. § 1254(e) (1994) (repealed 1996). Rather, individual IJ's exercised discretion in setting voluntary departure deadlines; "[i]n practice, voluntary departure was granted for generous periods of time." *Azarte*, 394 F.3d at 1284. As for motions to reopen, before IIRIRA's enactment, aliens had no statutory right to file a motion to reopen, but federal regulations allowed aliens to bring motions to reopen in order to present new information relevant to their status; these regulations also did not include a time limit. *See id.* at 1283.

Under the pre-IIRIRA statutory and regulatory scheme, both this court and the Ninth Circuit held that if an alien remained in the United States after the date set for voluntary departure, he could only obtain relief if exceptional circumstances existed. *See Stewart v. INS*,

---

**4**In *Azarte*, the petitioners also requested a stay of removal when they brought their motion to reopen; therefore, the Ninth Circuit did "not reach the question whether filing a motion to reopen automatically tolls the voluntary departure period." *Azarte*, 394 F.3d at 1288 n.20. However, in a later case, the Ninth Circuit held that requesting a stay was unnecessary because "the timely filing of a motion to reopen or reconsider automatically tolls the voluntary departure period." *Barroso v. Gonzales*, 429 F.3d 1195, 1205 (9th Cir. 2005).

181 F.3d 587, 596 (4th Cir. 1999); *Shaar v. INS*, 141 F.3d 953, 956 (9th Cir. 1998). A pending motion to reopen did not qualify as an exceptional circumstance, and therefore filing a motion to reopen did not toll the voluntary departure period. *See Stewart*, 181 F.3d at 596; *Shaar*, 141 F.3d at 957. The *Azarte* court overruled *Shaar*, its earlier precedent, finding that "the rationales that underlay *Shaar* are no longer applicable after IIRIRA." *Azarte*, 394 F.3d at 1286. It concluded that the changes in the law effected by IIRIRA operated to toll the voluntary departure period when an alien files a motion to reopen. *See id.* at 1289.

The Ninth Circuit relied in particular on IIRIRA's express authorization of immigrants to file motions to reopen, a right previously available only pursuant to regulation. The *Azarte* court reasoned that failure to toll the voluntary departure period would "deprive[ ] the motion to reopen provision of meaning by eliminating the availability of such motions to those granted voluntary departure." *Id.* at 1288. The court found that tolling the voluntary departure period during the pendency of a timely-filed motion to reopen would be "more consistent with the statute as a whole" because such an approach "effectuate[s] both statutory provisions." *Id. Azarte* also held that tolling the voluntary departure period would avoid an "absurd result," *i.e.*, the "nonsensical [notion] that Congress would have allowed aliens subject to voluntary departure to file motions to reopen but would have simultaneously precluded the BIA from issuing decisions on those motions." *Id.* at 1288-89. For these reasons, the court held that interpreting IIRIRA to toll the voluntary departure period while an alien's motion to reopen is being considered is "most consistent with IIRIRA's legislative scheme." *Id.* at 1289.

Although this approach holds some appeal, in our view the statutory scheme simply does not permit such an interpretation. First, interpreting the statute as *Azarte* did ignores the well-established canon of statutory construction that "a specific statutory provision controls a more general one." *Warren v. N.C. Dept. of Human Resources*, 65 F.3d 385, 390 (4th Cir. 1995); *see also Shawnee Tribe v. United States*, 405 F.3d 1121, 1129 (10th Cir. 2005) ("It is a fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs." (internal quotation marks omitted)). The

voluntary departure provision applies to *certain* removable aliens, *i.e.*, those "not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B)," while the motion to reopen provision applies to *all* aliens subject to removal.[5] *Compare* 8 U.S.C. § 1229c(a)(1) (2000) *with id.* § 1229a(c)(6)(A).

Following the normal rule of statutory construction, the more specific voluntary departure provision governs in those limited situations in which it applies, and the apparent conflict the *Azarte* court found between the two statutes disappears. Thus, contrary to *Azarte*'s suggestion, "eliminating the availability" of a motion to reopen to aliens granted voluntary departure does not "deprive[ ] the motion to reopen provision of meaning." *Azarte*, 394 F.3d at 1288. Rather, this interpretation gives effect to both provisions. A motion to reopen remains available to all aliens, but an alien who requests voluntary departure will forfeit his right to a decision on his motion to reopen if the IJ grants his request.

Although this result may be harsh, it is hardly "nonsensical" or "absurd," as the *Azarte* court suggested. 394 F.3d at 1288-89. Voluntary departure is not a right, but a *benefit*. This benefit, unlike removal, permits aliens to "avoid[ ] the stigma of compulsory removal, permits the alien to select his or her own destination, and facilitates the possibility of return to the United States." *Rife v. Ashcroft*, 374 F.3d 606, 614 (8th Cir. 2004); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 194 (4th Cir. 2004) (finding that the statutory provisions governing voluntary departure "reveal[ ] Congress' intention to offer an alien a specific benefit — exemption from the ordinary bars on subsequent relief — in return for a quick departure at no cost to the government").

---

[5]The statute does not guarantee voluntary departure even to eligible aliens. Rather, it provides that the Attorney General "may permit" eligible aliens to depart voluntarily, *see* 8 U.S.C. § 1229c(a)(1) (2000), and authorizes the Attorney General to issue regulations "limit[ing] eligibility for voluntary departure . . . for any class or classes of aliens." *Id.* § 1229c(e). As a practical matter, only a relatively small percentage of removable aliens are granted voluntary departure. *See, e.g.*, Executive Office for Immigration Review, *FY 2005 Statistical Yearbook* Q1 (indicating that 11 percent of removable aliens were granted voluntary departure in 2005).

Because voluntary departure is a privilege that is only available to a subset of removable aliens, it is neither "absurd" nor "nonsensical" to require aliens who wish to reap the benefits of voluntary departure to give up their right to a resolution of a motion to reopen.

As the Ninth Circuit itself noted in another case, "[t]he implied agreement underlying a voluntary departure order serves both parties. The government affords the alien a more convenient means of leaving the country, and, in exchange, the alien assures the government that he will not further press his right to remain in the country." *Medina-Morales v. Ashcroft*, 371 F.3d 520, 530 (9th Cir. 2004). Thus, voluntary departure allows some aliens to make a deal with the government: they must give up certain rights in exchange for the benefits that flow from voluntary departure.

On the other hand, to adopt the *Azarte* approach and mandate tolling of the voluntary departure period when an alien files a motion to reopen would have the effect of rendering the time limits for voluntary departure meaningless. If filing a motion to reopen automatically tolled the voluntary departure period, aliens who have been granted voluntary departure would have a strong incentive to file a motion to reopen in order to delay their departure. *See INS v. Doherty*, 502 U.S. 314, 323 (1992) ("[E]very delay works to the advantage of the deportable alien who wishes merely to remain in the United States."). As the Ninth Circuit acknowledged, when Congress enacted IIRIRA it "drastically limited the time allowed for voluntary departure." *Azarte*, 394 F.3d at 1285. The statute clearly states that the voluntary departure period shall not exceed 120 days, *see* 8 U.S.C. § 1229c(a)(2)(A) (2000), and a judicially created tolling provision contradicts the plain language of the statute and undermines the clear congressional intent.[6]

---

[6]The dissent in the Fifth Circuit's recent decision in *Banda-Ortiz* maintains that a strict reading of the statutory time limit on voluntary departure "proves too much" because the BIA regularly tolls the voluntary departure period during an alien's appeal to the BIA. 445 F.3d at 395 (Smith, J., dissenting). The dissent contends that "[i]f the voluntary departure period cannot exceed sixty days under any circumstance, an alien would risk more than a motion to reopen when he elects voluntary departure; he would also put in jeopardy his right to any review of the IJ's decision." *Id.* But our interpretation of IIRIRA does not call into

Accordingly, we cannot read IIRIRA as requiring tolling of the voluntary departure period when an alien files a motion to reopen. Rather, we believe that the statutory provisions governing motions to reopen and voluntary departure clearly indicate that filing a motion to reopen does not toll the voluntary departure period.[7] Accordingly, the BIA did not err when it rejected Dekoladenu's motion to reconsider on the ground that he had overstayed his voluntary departure date.

We note that even if we were to find that the statute was silent or ambiguous with respect to the effect of a motion to reopen on the voluntary departure period, we would have to defer to the BIA's interpretation of the statutes it administers. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron*, 467 U.S. at 842). If Congress had not spoken directly to the issue before us, the question would become whether the BIA's decision "is based on a permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 843) (internal quotation marks omitted). In our view the statute simply does not permit Dekoladenu's preferred interpretation: even if the tension between the two provisions at issue here revealed an ambiguity (and we do not believe it does), the BIA's construction of the statute is, for

question the BIA's practice of tolling the voluntary departure period during the pendency of an appeal. The statutory scheme treats appeals and motions to reopen very differently. An order of removal does not become final until the BIA has decided the appeal or the time period for appealing has expired. *See* 8 U.S.C. § 1101(a)(47)(B) (2000); *see also In re A-M*, 23 I & N Dec. 737, 743-44 (BIA 2005); 5 Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure* § 64.03[4][b] (rev. ed. 2005). An alien is not bound by the voluntary departure period until the order of removal is final. *See* 8 U.S.C. § 1229c(b)(1); *In re A-M*, 23 I & N Dec. at 743. By contrast, motions to reopen do not disturb the finality of an order of removal. Thus, the BIA's practice of staying the execution of a removal order during a timely appeal finds justification in the statutory scheme, but no such statutory justification exists for motions to reopen.

[7]For this reason the *Azarte* court's reliance on "the well-established canon of construction that deportation statutes should be construed in favor of the alien" is misplaced. *Azarte*, 394 F.3d at 1289. This canon only comes into play when there are "ambiguities" in the statute. *Kwai Fun Wong v. United States*, 373 F.3d 952, 962 (9th Cir. 2004).

the reasons outlined above, clearly reasonable and therefore merits deference. *Cf. Nwolise*, 4 F.3d at 309 ("[W]here the BIA's interpretation of the statutory section is neither inconsistent [n]or unjustified, we [will] uphold the Board's construction which, in its estimation, will better serve the legislative intent and purpose." (internal quotation marks omitted) (second alteration in original)).[8]

## III.

Dekoladenu also contends that the BIA's interpretation of sections 1229a and 1229c violates the Due Process Clause of the Fifth Amendment. According to Dekoladenu, the BIA's approach is arbitrary because an alien granted voluntary departure will only obtain a resolution of a timely filed motion to reopen if the IJ "happens to act" before the expiration of the voluntary departure period. Brief of Appellant at 7-8. We reject this argument because Dekoladenu has failed to state a due process claim.

In order to make out a due process claim, a claimant must "first establish that he had a property or liberty interest at stake." *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002). Dekoladenu brought his motion to reopen seeking adjustment of status. Motions to reopen and requests for adjustment of status are purely discretionary forms of relief. *See* 8 U.S.C. § 1255 (2000); 8 C.F.R. § 1003.2(a) (2006). No property or liberty interest can exist when the relief sought is discretionary. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464-67 (1981); *see also Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003) (holding that "[n]o person has a constitutionally protected

---

[8]Contrary to the concurrence's suggestion, our opinion in this case does not decide the effect of a motion to reopen when an alien who has been granted voluntary departure seeks a form of relief not listed in 8 U.S.C. § 1229c(d). Because Dekoladenu sought adjustment of status — which is listed in § 1229c(d) — we need not reach this question. That said, in our view Congress's intent to limit the voluntary departure period likely applies equally regardless of the type of relief sought in a motion to reopen. Indeed, the argument that a motion to reopen tolls the voluntary departure period is even less persuasive in cases in which the alien retains the ability to seek relief after the expiration of the voluntary departure period.

liberty interest" in the discretionary privilege of adjustment of status); *Smith*, 295 F.3d at 430 ("On many occasions this circuit has held that discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause."). Accordingly, because Dekoladenu has neither a liberty nor a property interest in adjustment of status, he cannot make out a due process violation.

IV.

For the foregoing reasons, the petition for review is

*DENIED*.

GREGORY, Circuit Judge, concurring in the judgment:

Although I agree with the majority's resolution of Dekoladenu's due process claim and its decision to deny the petition for review, I would resolve the case on narrower grounds. As the majority correctly notes, the question before us is whether the BIA abused its discretion when it affirmed the denial of Dekoladenu's motion to reconsider solely because Dekoladenu had overstayed his departure date. *See* Op. at 3-4 n.2. Because the INA bars aliens who overstay their periods of voluntary departure from receiving adjustment of status, I would uphold the BIA's decision.

Under the INA, a voluntary departure recipient becomes ineligible for five forms of relief, including adjustment of status, when he overstays his voluntary departure period:

> If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien shall be subject to a civil penalty of not less than $ 1,000 and not more than $ 5,000, and be ineligible for a period of 10 years for [voluntary departure, cancellation of removal, *adjustment of status*, change of nonimmigrant classification, and record of lawful admission].

8 U.S.C. § 1229c(d) (2000). Voluntary departure is only granted if an alien requests it and is notified of the consequences of remaining in

the country beyond his departure period. *See* 8 C.F.R. § 1240.26(b)(1)(i) (An IJ may grant voluntary departure only if the alien "[m]akes such request"); 8 U.S.C. § 1229c(d) ("The order permitting the alien to depart voluntarily shall inform the alien of the penalties under this subsection."). Thus, by express agreement, a voluntary departure recipient accepts the risk that any subsequent motion to reopen seeking voluntary departure, cancellation of removal, adjustment of status, change of nonimmigrant classification, or record of lawful admission will be denied by operation of the voluntary departure date.

In spite of the express consequences of his agreement, Dekoladenu contends that the BIA abused its discretion in affirming the IJ's denial of his motion to reconsider. Specifically, Dekoladenu argues that the BIA's conclusion that a motion to reopen does not toll the running of a voluntary departure period deprives aliens of their right to file a motion to reopen pursuant to 8 U.S.C. § 1229a(c)(6). *See* 8 U.S.C. § 1229a(c)(6) (2000) ("An alien may file one motion to reopen proceedings under this section."). On these facts, however, Dekoladenu's argument is without merit. Even if Dekoladenu did not relinquish his right to file a motion to reopen when he accepted voluntary departure, he did give up his ability to obtain adjustment of status in the event he overstayed his voluntary departure period. Because Dekoladenu's motion to reopen was premised *solely* on a form of relief for which he was ineligible, the IJ's denial of that motion, and his subsequent motion to reconsider, was proper.* Accordingly, the BIA did not abuse its discretion in affirming the IJ. I therefore concur in the judgment.

---

*In this regard, I agree with the majority's denial of the petition, but not with its pronouncement of a general rule against tolling. Although Dekoladenu became ineligible for adjustment of status when he stayed beyond his departure period, his failure to depart did not render him ineligible for other forms of relief, such as asylum or withholding of removal. Because Dekoladenu moved to reopen solely to request adjustment of status, we need not reach the question of whether tolling is an appropriate means of effectuating an alien's right to file a motion to reopen premised on a ground other than those specifically listed in 8 U.S.C. § 1229c(d).