FILED
United States Court of Appeals
Tenth Circuit

**August 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELVIN ROLANDO LOPEZ,

Petitioner,

v.

MICHAEL B. MUKASEY, United
States Attorney General,

Respondent.

No. 07-9549
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

---

Melvin Rolando Lopez, a citizen and native of Guatemala, seeks review of

the Board of Immigration Appeals' ("BIA") denial of his motion to reopen and its

failure to extend his voluntary departure period. The BIA had previously denied

cancellation of removal, and Lopez moved to reopen his case on two grounds: (1)

new evidence that his U.S. citizen son would suffer extreme hardship if Lopez

were removed, and (2) ineffective assistance of counsel in his removal

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

proceedings because his representative failed to argue that he was eligible for crosschargeability with the visa petition of his wife, a citizen and native of Mexico.[1] The BIA found that the new evidence was not likely to change the outcome of his case, and that his representative's alleged error was not prejudicial because crosschargeability was unavailable in his case. Accordingly, it denied his motion to reopen and his request for a stay of removal.

Lopez petitioned this court for review, and we stayed his removal pending our decision. His petition claims that the BIA: (1) applied the wrong standard of review to his hardship claim, (2) erroneously interpreted the law in determining that crosschargeability did not apply in his case, and (3) violated his due process rights by not ruling on his motion for extension of voluntary departure. In addition, he moves for remand to the BIA so that he may withdraw his prior request for voluntary departure, pursuant to Dada v. Mukasey, 128 S. Ct. 2307 (2008).[2] Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we deny the petition for review and deny the motion for remand.

---

[1] Crosschargeability refers to the practice of allowing spouses from two different countries to be treated as natives of the same country for purposes of visa eligibility. See 8 U.S.C. § 1152(b)(2). Because visas might become available at different times for each spouse, depending on their country of origin, this practice prevents spouses from being separated by granting them visas at the same time. See id.; Matter of Ascher, 14 I. & N. 271, 276 (1973).

[2] Lopez had argued in his briefs and at oral argument that his motion to reopen should have automatically tolled the period for voluntary departure, but in his motion for remand, he recognizes that Dada forecloses this argument. See 128 S. Ct. at 2311.

Lopez entered the United States without inspection in 1989, at the age of 13. He applied for asylum in 1993, and his application remained pending for over a decade. During that time, he met Sandra Cuellar, a citizen of Mexico, and the couple married in February 2001. Both their son Jacob, born in 2002, and their daughter, born in 2007, are United States citizens.

Before she married Lopez, Cuellar had received an approved I-130 visa petition with a priority date of July 10, 1995. With an approved visa petition, Cuellar may apply to adjust her status to lawful permanent resident as soon as her priority date becomes current. See 8 C.F.R. § 245.1(a), (g)(1). Whether a priority date is "current" depends on the immigrant's preference category and country of chargeability. As the married daughter of a United States citizen, Cuellar is in the third preference category for family-sponsored visas. See 8 U.S.C. § 1153(a)(3). Because she was born in Mexico, her petition is chargeable to Mexico. § 1152(b). In April 2001, after her marriage to Lopez, Cuellar's priority date briefly became current and she applied for an adjustment of status. See U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, Apr. 2001. But before her application was processed, the current priority date was changed to an earlier date, making her not yet eligible for adjustment of status. See U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, July 2001. Her application remains pending until her priority date becomes current again.

In 2005, Lopez's asylum petition was denied, and his case was referred to an immigration judge ("IJ") for removal proceedings. Lopez retained Elizabeth Coker as his nonattorney representative and filed for cancellation of removal based on hardship to his son Jacob if Lopez were removed. At his hearing before the IJ, Coker and the IJ discussed Cuellar's approved visa petition. Coker stated that Cuellar's priority date meant that she was not yet eligible for an adjustment of status.[3] Coker never raised the issue of crosschargeability. Lopez testified at the hearing and indicated that Jacob was in good health. Based on the evidence presented, the IJ concluded that Lopez had failed to show "exceptional and extremely unusual hardship" to his son, which was the only asserted basis for relief from removal. Accordingly, the IJ denied Lopez's request for cancellation of removal, but granted his request to voluntarily depart the country.

With Coker as his representative, Lopez appealed the IJ's decision to the BIA, again arguing hardship to his son as his only ground for relief. On December 21, 2006, the BIA summarily denied his appeal and allowed Lopez until February 19, 2007, to voluntarily depart.

---

[3] At the time of the hearing, the Department of State was processing applications for Mexican citizens in the third family-preference category with priority dates of October 8, 1994, and earlier. See U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, Jan. 2006. Because Guatemala is not an oversubscribed chargeability area, for Guatemalans in that preference category, the current priority date was July 1, 1998. Id.

Lopez retained legal counsel, and on January 30, 2007, he filed a motion to reopen, a motion for stay of removal and extension of the voluntary departure period, and a request to expedite the determination of all motions. In his motion to reopen, Lopez asserted that since the denial of his appeal, Jacob had developed a seizure disorder that substantially changed his medical needs. Lopez urged the BIA to consider this new evidence of hardship. In addition, he contended that Coker had been ineffective in failing to argue that Lopez's wife was eligible for an immediate adjustment of status under crosschargeability. According to Lopez, because Cuellar was married to a Guatemalan native, she could benefit from the priority date for Guatemalans, in which case the priority date on her petition was current. Because Cuellar was eligible to adjust her status, Lopez argued that he was entitled to relief from removal as her spouse.

The BIA denied Lopez's motion to reopen and the motion for stay of removal on June 11, 2007. In doing so, it concluded that, even in light of the new evidence of Jacob's medical problems, Lopez had failed to show that he was likely to succeed on his hardship claim. It also found that he had not been prejudiced by Coker's alleged error because Cuellar and Lopez had not simultaneously applied for visas or for admission to the United States.[4] Therefore, the petition was not crosschargeable to Lopez. The BIA did not rule

---

[4] The BIA did find that Lopez had satisfied the procedural requirements of In re Lozada, 19 I. & N. Dec. 637 (1988), for raising a claim of ineffective assistance in a motion to reopen.

-5-

on Lopez's request for an extension of voluntary departure. Lopez now petitions this court for review of the BIA's June 11 order.

## II

We have jurisdiction to review the denial of a motion to reopen, which we consolidate with our review of the underlying order of removal. See Infanzon v. Ashcroft, 386 F.3d 1359, 1361-62 (10th Cir. 2004) (citing 8 U.S.C. § 1252(b)(6)). We review the BIA's denial of a motion to reopen for an abuse of discretion. Id. at 1362. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Id. (quotation omitted).

With respect to the underlying order of removal, however, our jurisdiction is limited. 8 U.S.C. § 1252(a)(2). Where the BIA denies discretionary relief from removal because the petitioner's circumstances do not constitute "exceptional and extremely unusual" hardship, we lack jurisdiction over its discretionary determination. §§ 1182 & 1252(a)(2)(B)(i); Morales Ventura v. Ashcroft, 348 F.3d 1259, 1262 (10th Cir. 2003). We may, however, exercise jurisdiction over "constitutional claims or questions of law" raised by the petitioner. § 1252(a)(2)(D); Vargas v. Dep't of Homeland Security, 451 F.3d 1105, 1107 (10th Cir. 2006). Thus in the present case, we only consider whether

the BIA abused its discretion in evaluating Lopez's motion to reopen, and do not address whether the particular facts of his case might justify discretionary relief.

**A**

Lopez asserts that the BIA applied an incorrect legal standard for determining if his case should be reopened on the basis of hardship. He suggests that the BIA expected him to <u>prove</u> extreme hardship. But on a motion to reopen, he argues, he need only show "a reasonable likelihood" that a new hearing on hardship would result in a ruling in his favor, relying on <u>In re S-V-</u>, 22 I. & N. Dec. 1306, 1308 (2000).

In denying Lopez's motion to reopen, the BIA found that Lopez had failed to establish that the new evidence of his son's illness "would likely change the outcome of his case." Among other things, the BIA noted that Lopez had not presented any evidence, "other than his own speculation," that his son would be unable to attain adequate medical treatment in Guatemala. Lopez argues that the BIA improperly expected him to "present his entire case," rather than merely show a likelihood of success sufficient to warrant an evidentiary hearing. Even assuming that the BIA's order can be characterized in this way, it acted within its discretion in concluding that he had not sufficiently shown his entitlement to discretionary relief.

There are at least three "independent" grounds on which the BIA may deny a motion to reopen: (1) failure to establish a prima facie case for the relief

-7-

sought; (2) failure to produce new evidence; and (3) where a movant seeks discretionary relief, a determination that he is not entitled to the relief sought. INS v. Doherty, 502 U.S. 314, 323 (1992). In cases involving discretionary relief, the BIA "may leap ahead" over the prima facie case and new evidence grounds and determine that, even if those grounds were met, the movant is not entitled to relief. See INS v. Abudu, 485 U.S. 94, 105 (1988). In other words, the BIA need not even consider whether the standard for prima facie case has been met.

Lopez's argument is based on the "reasonable likelihood of success" standard, which relates only to whether the movant has established a prima facie case. In re S-V-, 22 I. & N. Dec. at 1308 (when a movant seeks nondiscretionary relief, he may establish a prima facie case for relief by showing a reasonable likelihood "that the statutory requirements for relief have been satisfied"). But here, the BIA decided Lopez's case on the third ground. Under the standard applicable to requests for discretionary relief, a movant bears a "heavy burden" of establishing that "the new evidence offered would likely change the result in the case." Matter of Coelho, 20 I. & N. Dec. 464, 473 (1992) (citing Doherty, 502 U.S. at 322-24 and Abudu, 485 U.S. at 102-11). The BIA applied this correct standard of review, and was not required to consider Lopez's prima facie case under the "reasonable likelihood" standard. Accordingly, it did not abuse its discretion.

-8-

**B**

Lopez next claims that he suffered ineffective assistance of counsel in his initial removal proceedings because his counsel failed to argue crosschargeability. In a removal proceeding, a petitioner does not have Sixth Amendment right to counsel, but he does have a Fifth Amendment right to due process. Michelson v. INS, 897 F.2d 465, 467-68 (10th Cir. 1990). Thus a petitioner may raise an ineffective assistance of counsel claim within the context of a denial of due process. See id. at 468; see also Akinwunmi v. INS, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999) (per curiam). In order to prevail on his due process claim, Lopez must establish that counsel's alleged error was so detrimental as to cast doubt on the fundamental fairness of the proceeding. See id. (citing Michelson, 897 F.2d at 468). We ask whether the representative's error prejudiced Lopez's case, such that there is a reasonable likelihood that he would have obtained cancellation of removal if his representative had properly raised and argued the crosschargeability issue. See United States v. Aguire-Tello, 353 F.3d 1199, 1209 (10th Cir. 2004); see also Hernandez v. Mukasey, 524 F.3d 1014, 1017 (9th Cir. 2008).

In this case, the BIA determined that Lopez failed to show prejudice in the prior proceedings, because even if Lopez's representative had raised crosschargeability, it would not have altered the outcome of his case as Lopez was ineligible for crosschargeability. Lopez urges that in fact he and his wife

were eligible for crosschargeability at the time of his removal proceeding. Crosschargeability would have allowed her to benefit from the earlier priority date for Guatemalan natives. With an earlier priority date, Lopez argues that she could have adjusted her status immediately. As the spouse of someone eligible for adjustment of status, he in turn was entitled to relief from removal.

Under 8 U.S.C. § 1255(a), an alien may adjust her status to that of a lawful permanent resident if she: (1) applies for an adjustment, (2) is eligible to receive an immigrant visa, and (3) an immigrant visa is immediately available at the time the application is filed. If an alien is entitled to adjust her status under this section, then her "accompanying or following to join" spouse is also entitled to the same status. § 1153(d). Cuellar met the second requirement of § 1255, in that she was eligible to receive an I-130 immigrant visa, but her visa was not immediately available at the time of Lopez's hearing, nor is it available now.

Lopez urges that his wife should be treated as a native of Guatemala for the purpose of determining whether a visa is immediately available for her. Under § 1152(b)(2), an alien may be treated as a native of the same country as her spouse in determining visa eligibility. This section provides that:

> if an alien is chargeable to a different foreign state from that of his spouse, the foreign state to which such alien is chargeable may, if necessary to prevent the separation of husband and wife, be determined by the foreign state of the spouse he is accompanying or following to join, if such spouse has received or would be qualified for an immigrant visa and if immigration charged to the foreign state to which such spouse has been or

-10-

> would be chargeable has not reached a numerical level
> established under subsection (a)(2) of this section for that
> fiscal year . . . .

Id. Although the language of the statute contemplates chargeability running from the visa-eligible spouse to the accompanying spouse, the doctrine of crosschargeability allows it to run both ways. See U.S. Dep't of State, 9 Foreign Affairs Manual § 42.12, n.3.8. Lopez, as the "accompanying" spouse, seeks to confer his preferential chargeability status on Cuellar, who would be qualified for an immigrant visa.

In a factually similar case, the BIA addressed how a visa-eligible spouse could benefit from the chargeability of his accompanying spouse. Ascher, 14 I. & N. Dec. 271. Ascher was born in Ecuador and had married a woman from the United Kingdom, and both Ascher and his wife were living in the United States as nonimmigrants. Like Cuellar, Ascher had a pending family-preference petition but was not yet admissible. He sought to benefit from his wife's country of origin, but she had not applied for a visa nor did it appear that she was eligible for one. Id. at 275. The BIA determined that Ascher could benefit from his wife's nationality, but only if they simultaneously applied for visas and then applied together for admission to the United States. Id. at 276; see also U.S. Dep't of State, 9 Foreign Affairs Manual § 42.12, n.3.8.

Applying the rule in Ascher to the present case, the BIA concluded that Lopez was not eligible for relief under § 1152(b)(2). It found that Lopez failed to

show that he and Cuellar had applied simultaneously for visas or for admission. Moreover, when Cuellar applied to adjust her status in 2001, she expressly asserted that Lopez was not applying with her.

Lopez counters that the relevant question is whether they simultaneously received visas, not whether they applied together. Although Cuellar submitted an application for adjustment of status, that application remains pending and she has yet to receive a visa. Because Cuellar never received a visa, he argues, he is not precluded from employing crosschargeability. In addition, he asserts that Cuellar could always file a new application for adjustment of status listing him as her accompanying spouse.

Contrary to Lopez's arguments, we cannot conclude that the BIA's decision was so "devoid of any reasoning" or such an inexplicable departure from its own precedent as to constitute an abuse of discretion. See Infanzon, 386 F.3d at 1362; see also Omar v. Mukasey, 517 F.3d 647, 651 (2d Cir. 2008). Moreover, even if Lopez's wife could have withdrawn her application and reapplied simultaneously with him, it is not clear that she would have done so. Because the BIA provided a sufficient basis for its rejection of Lopez's motion to reopen, it did not abuse its discretion. We therefore deny his petition for relief on this basis.

**C**

-12-

Lopez claims that the BIA committed clear error in failing to rule on his motion for an extension of voluntary departure.[5]  He also moves to remand his case to the BIA so that he may withdraw his request for voluntary departure nunc pro tunc.

With respect to Lopez's motion to extend the time for voluntary departure, the BIA did not err in failing to rule on the motion because it lacked the authority to do so.  The authority to extend time for voluntary departure rests exclusively with the district director for the Department of Homeland Security, the Deputy Executive Associate Commissioner for Detention and Removal, and the Director of the Office of Juvenile Affairs.  See 8 C.F.R. § 1240.26(f).  Although the BIA may reinstate voluntary departure if the removal proceeding has been reopened before expiration of the original period of voluntary departure, id., the BIA did not reopen Lopez's case.  A reinstatement of voluntary departure was therefore not appropriate.

As to his motion for remand, Lopez relies on the Supreme Court's recent decision in Dada.  The Supreme Court held that although the filing of a motion to reopen does not automatically toll the time for voluntary departure, an alien may request withdrawal from his agreement to voluntarily depart before the end of the

---

[5] Lopez does not explain why we should review this decision for "clear error," but because we conclude that the BIA did not err under any standard, we do not address the standard of review.

departure period. 128 S. Ct. at 2319-20. The alien must, however, request this relief before the departure period expires. Id. at 2311.

In the present case, Lopez never sought to withdraw from voluntary departure. He suggests that the BIA may enter an order nunc pro tunc, treating his motion to withdraw filed now as having been filed before the expiration of the departure period. However, he offers no authority allowing for this nunc pro tunc procedure. Cf. Iouri v. Ashcroft, 464 F.3d 172, 182 (2d Cir. 2006). Because Lopez has failed to show that he is entitled to these procedures on remand, we deny the motion to remand.

### III

We **DENY** Lopez's petition and **DENY** his motion to remand to the BIA. Petitioner's motion to supplement the record is granted.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge