FILED
United States Court of Appeals
Tenth Circuit

**March 17, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HECTOR AGUSTIN SANTOS,
GLORIA CORINA MAZARIEGOS
ALVARADO, JOSELIN JESENIA
SANTOS MAZARIEGOS,

        Petitioners,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

        Respondent.

No. 07-9558
(Petition for Review)

**ORDER AND JUDGMENT**[**]

Before **LUCERO** and **EBEL**, Circuit Judges, and **FRIZZELL**,[***] District Judge.

Petitioners Hector Agustin Santos, Gloria Corina Mazariegos Alvarado, and

Joselin Jesenia Santos Mazariegos seek review of the decision of the Board of

Immigration Appeals ("BIA") denying their motion to reopen removal proceedings.

[*] Eric H. Holder, Jr. is substituted for Michael B. Mukasey, pursuant to Fed. R. App. P. 43(c)(2).

[**] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. 32.1 and 10th Cir. R. 32.1.

[***] The Honorable Gregory K. Frizzell, United States District Judge for the Northern District of Oklahoma, sitting by designation.

We have jurisdiction, and we deny the petition for review.

## I. Background

Hector Agustin Santos and Gloria Corina Mazariegos Alvarado ("the Santoses") are natives and citizens of Guatemala. Hector Santos entered the United States without inspection in 1988; in 1992, he left the country, returned to Guatemala to marry, and re-entered the United States. Hector's wife, Gloria, and their daughter, Joselin, entered the country in 1994.[1] The Santoses now reside in Oklahoma City, Oklahoma, where Hector has been employed as a cook and Gloria has worked in housekeeping at a local hotel. Since arriving in the United States, Hector and Gloria have had two more children, Carina and Beverly, both of whom are United States citizens.

In 2005, the Santoses were issued a Notice to Appear before an Immigration Judge ("IJ"). The Santoses retained an accredited representative to assist them in the proceedings before the IJ. The representative filed applications for cancellation of removal on the Santoses' behalf.[2] After a hearing held on

[1] Joselin Santos Mazariegos is also a native and citizen of Guatemala. Although she is named as a party to this action, the BIA's basis for rejecting Joselin's application for cancellation of removal differed from its basis for rejecting her parents' applications. *See* A.R. at 2 n.1. The Santoses do not argue that the BIA erred in rejecting Joselin's application. They do, however, contend that Joselin may become eligible for cancellation of removal if her parents' petition for review is successful. *See* Petitioners' Br. 19. Because we deny the Santoses' petition, we need not address the issue of Joselin's eligibility for cancellation of removal.

[2] According to 8 U.S.C. § 1229b(b) as it was written at the time of the Santoses' hearing, the Attorney General may cancel removal of an alien who is inadmissible or

November 16, 2005, the IJ concluded that the Santoses had failed to establish that their two United States citizen children would suffer exceptional or extremely unusual hardship as a result of the Santoses' removal from the United States. Accordingly, the IJ denied the Santoses' applications for cancellation of removal. The IJ granted the Santoses' applications for voluntary removal and ordered the Santoses to depart no later than January 17, 2006. The Santoses appealed the IJ's ruling to the BIA, which affirmed the IJ's ruling without opinion. The BIA also reinstated voluntary departure, requiring the Santoses to depart by May 27, 2007.

Prior to the expiration of the voluntary departure period, petitioners obtained new counsel and filed a motion to reopen their case with the BIA. Petitioners claimed their case should be reopened because their previous

---

deportable from the United States if the following conditions are met:

> **(A)** [the alien] has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> **(B)** [the alien] has been a person of good moral character during such period;
>
> **(C)** [the alien] has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title (except in a case described in section 1227(a)(7) of this title where the Attorney General exercises discretion to grant a waiver); and
>
> **(D)** [the alien] establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b) (current version at 8 U.S.C. § 1229b(b) (Supp. 2009)).

representative had failed to call witnesses and present evidence that would have established the level of hardship necessary to support a grant of cancellation of removal.[3] They further claimed their case should be reopened on the basis of new evidence that, since the deportation order was entered, Carina had experienced psychological distress and anxiety attacks. Petitioners also filed a motion for stay of deportation and extension of voluntary departure, as well as a motion to expedite either of the two motions before the BIA.

The BIA denied petitioners' motion to reopen. It concluded that petitioners had failed to demonstrate they had suffered any prejudice as a result of their representative's actions. Specifically, the BIA determined that the evidence the representative allegedly failed to introduce would not have had an effect on the outcome of the proceedings. The BIA held that "the respondents would have been unable to establish exceptional and extremely unusual hardship to . . . qualifying relatives irrespective of whether their former representative had presented the additional evidence that [was] submitted with their motion to reopen." A.R. at 3.

---

[3] In support of their motion to reopen, petitioners submitted evidence to the BIA that, they claim, should have been presented in support of their application for cancellation of removal. The evidence allegedly omitted includes (1) medical reports pertaining to the health concerns of the Santoses' two United States citizen children, (2) statements of a teacher and a principal regarding the educational hardships that the children would face in Guatemala, (3) a 2005 country conditions report on Guatemala, and (4) a psychologist's report discussing the difficulties that the Santoses' United States citizen children would face if they remained in the United States without their parents and opining that the children would be deprived of educational opportunities and healthcare in Guatemala.

The BIA further concluded that petitioners had failed to demonstrate that their case should be reopened in light of newly discovered evidence. The BIA did not rule on petitioners' motion for stay of deportation and extension of voluntary departure. Petitioners timely filed this appeal, and this court subsequently granted petitioners' unopposed emergency motion for stay of removal pending consideration of their petition for review.

## II. Discussion

### A. Jurisdictional Analysis

We first address the Government's jurisdictional argument. The Government asserts we have no jurisdiction to determine whether the omissions of petitioners' former representative could have altered the outcome of the case because the ultimate hardship determination is a "discretionary determination" and "purely a judgment call on the part of the Board." *See* Respondent's Br. 18-20 (citing 8 U.S.C. § 1252 (a)(2)(B)(i) and *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003)).

As we previously have recognized, § 1252(a)(2)(B)(i) does not deprive us of jurisdiction if the exception to that provision, 8 U.S.C. § 1252(a)(2)(D), applies. *Alzainati v. Holder*, 568 F.3d 844, 850 (10th Cir. 2009). Section 1252(a)(2)(D) specifically permits this court to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D); *see also Alzainati*, 568 F.3d at 850 ("[Section 1252(a)(2)(D)] permits judicial

review of constitutional claims and questions of law."). The Santoses' claim falls within this exception. The Santoses' challenge is not directed solely at the BIA's discretionary factual determination that the omitted evidence would not have affected the outcome of their case; instead, the Santoses are challenging the standard the BIA applied in reaching that decision. Because the claim implicates the Santoses' due process rights, we have jurisdiction to review the BIA's decision. *See Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002) (reviewing the BIA's denial of the petitioner's motion to reopen and recognizing that the petitioner's claim that his retained counsel was ineffective implicated the petitioner's Fifth Amendment rights).[4]

## B. The Santoses' Claims

The Santoses raise three issues on appeal: First, they assert that the BIA applied the wrong standard in reviewing their ineffective-assistance-of-counsel claim. Second, they claim that the voluntary departure period should have been tolled when they filed their motion to reopen. Third, they maintain that the BIA erred in failing to rule on their motion for stay of removal and extension of

---

[4] *See also Bernabe-Orduno v. Gonzales*, 244 F. App'x 190, 192 n.1 (10th Cir. 2007) (unpublished) ("Notwithstanding § 1252(a)(2)(B), because the question of ineffective assistance of counsel in immigration proceedings is grounded in the constitutional claim of a due-process violation, we have jurisdiction to consider [the petitioner's] claim under 8 U.S.C. § 1252(a)(2)(D)." (citation omitted)).

voluntary departure.[5]

### 1. The Ineffective-Assistance Claim

We turn first to the Santoses' claim that the BIA applied the wrong standard of review when it denied their motion to reopen proceedings based on alleged ineffective assistance. "We review the BIA's decision on a motion to reopen for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Infanzon v. Ashcroft,* 386 F.3d 1359, 1362 (10th Cir. 2004) (citation and quotation marks omitted); *see Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003).

Although there is no Sixth Amendment right to counsel in civil deportation proceedings, "the Fifth Amendment guarantees aliens subject to deportation the right to a fundamentally fair deportation proceeding." *Osei*, 305 F.3d at 1208; *see Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999) (per curiam). Thus, a petitioner's claim that his counsel was ineffective may implicate the Fifth Amendment if the petitioner can show that "his counsel's ineffective assistance so prejudiced him that the proceeding was fundamentally unfair." *Akinwunmi*, 194 F.3d at 1341 n.2 (citation omitted).

---

[5] The Santoses admit that the denial of the motion to reopen on the basis of new, previously unavailable evidence is a discretionary decision and do not seek review of the denial on that particular basis. Pet. Br. 17.

-7-

The Santoses claim the BIA abused its discretion by applying an improper standard when assessing the impact of their representative's conduct. According to the Santoses, the BIA's ruling was based on its determination that "the [additional] evidence did not establish that any hardship the qualifying relative may face upon their parents' removal to Guatemala would rise to the level of exceptional and extremely unusual." Petitioners' Br. 21. The Santoses assert that, by basing its ruling on that determination, the BIA impermissibly required them to establish that a qualified relative *would* suffer from exceptional and extremely unusual hardship if they were deported. The Santoses maintain that they were not required to meet this strict standard in order to prevail on their motion to reopen; instead, they submit, they were required to demonstrate only that their representative's deficient performance *may* have impacted the outcome of the proceedings. *See* Petitioners' Br. 18 (quoting *Godinez v. Keisler*, 249 F. App'x 555, 557 (9th Cir. 2007) (unpublished)). The Santoses submit that their motion to reopen would have been granted under this more lenient standard, as the outcome of the proceedings *may* have differed had their representative introduced the medical reports pertaining to the Santos children's health issues, the letters discussing the educational hardship that the Santos children would face if they were to leave the United States, and the Country Conditions Report on Guatemala.

This court has not adopted the rule that, to establish prejudice, the

petitioner "need only demonstrate that the deficient performance by counsel *may* have affected the outcome of proceedings," *Godinez*, 249 F. App'x at 557 (emphasis added), and we decline to do so now. Contrary to the Santoses' assertions, a petitioner claiming to be prejudiced by his representative's ineffective assistance must do more than demonstrate that the outcome of the proceedings *may* have differed absent the deficient representation. In order to demonstrate prejudice under this circuit's case law, a petitioner is required to show there is a *reasonable likelihood* that he would have obtained the relief sought absent his representative's misconduct. *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (en banc); *see also Lopez v. Mukasey*, 313 F. App'x 96, 100 (10th Cir. 2008) (unpublished) (citing *Aguirre-Tello*, 353 F.3d at 1209) (applying the "reasonable likelihood" standard to the petitioner's ineffective assistance claim).

We conclude that the BIA applied the appropriate standard of review in analyzing whether the Santoses were prejudiced by their representative's deficient performance. Although the BIA did not discuss the "reasonable likelihood" standard in its opinion, it nevertheless evaluated the evidence that the Santoses' representative failed to introduce and concluded that, even if the representative had introduced that evidence, the Santoses would have been unable to establish exceptional and extremely unusual hardship. A.R. at 3. In short, the BIA found that there was *no* reasonable likelihood that the representative's deficient

performance affected the outcome of the proceedings. Accordingly, it concluded that the Santoses were not prejudiced by their counsel's failure to introduce the additional evidence. The BIA did not abuse its discretion in reaching this conclusion. *Cf. Lopez*, 313 F. App'x at 101-02 (holding that the BIA did not abuse its discretion in concluding that the petitioner "failed to show prejudice . . . because even if [his] representative had raised crosschargeability, it would not have altered the outcome of his case as [the petitioner] was ineligible for crosschargeability").

### 2. Whether the Motion to Reopen Automatically Tolled the Voluntary Departure Period.

We now turn to the Santoses' assertion that the voluntary departure period should have been tolled automatically when they filed their motion to reopen proceedings.[6] The Santoses point out that, if an alien who has been granted

---

[6] The Government asserts that this court cannot address the issue of whether a timely filed motion to reopen automatically tolls the voluntary departure date because the BIA did not decide the issue. *See* Respondent's Br. 36. Despite the Government's contentions, we believe this issue is properly before us. In its brief, the Government states that, in essence, the Santoses asked the BIA toll the voluntary departure period. *See* Respondent's Br. 33 n.10; *see also* A.R. at 57, 67 (discussing the Santoses' choice between departing voluntarily and pursuing their motion to reopen, and requesting an extension of voluntary departure). On appeal, the Santoses claim that the BIA erred by failing to rule on that issue. The question of whether the BIA was required to toll the voluntary departure period is central to the Santoses' claim that the BIA erred by failing to do so. Therefore, this court may address the issue insofar as it pertains to the Santoses' claim of error. *Cf. Lopez v. Mukasey*, 313 F. App'x 96, 102-03 (10th Cir. 2008) (unpublished) (addressing the BIA's authority to rule on the motion to extend time for voluntary departure in conjunction with its analysis of whether the BIA erred in failing to rule on that motion). Furthermore, to the extent the Government argues that we must remand this question so the BIA may bring its expertise to bear on the issue, *see*

voluntary departure remains in the country after his departure date, he will be subject to civil penalties.  *See* 8 U.S.C. § 1229c(d).  If, however, the alien leaves the country while a motion to reopen proceedings is pending, the motion to reopen will be deemed withdrawn.  8 C.F.R. § 1003.2(d).  As a result of the interplay between these two provisions, many aliens, like the Santoses, face the difficult choice of either (1) departing in a timely fashion and abandoning their motions to reopen, or (2) pursuing their motions to reopen at the cost of becoming subject to the penalties associated with overstaying their voluntary departure dates.  The Santoses submit that the filing of a motion to reopen proceedings should automatically toll the voluntary departure period so that aliens granted voluntary departure would not be required to make such a choice.

At the time this case was argued, the circuits were divided over the appropriate means of dealing with an alien who had filed a motion to reopen prior to his voluntary departure date, but whose case had not been, or could not be, decided by the expiration of the voluntary departure period.[7]  The Supreme Court

Respondent's Br. 36, we conclude that any remand would be futile in light of the Supreme Court's intervening decision in *Dada v. Mukasey*, 128 S.Ct. 2307 (2008).  *See infra*.

[7] *Compare Sidikhouya v. Gonzales*, 407 F.3d 950 (8th Cir. 2005) (permitting the voluntary departure period to be tolled when a motion to reopen was filed prior to the voluntary departure date), *and Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005) (same), *with Dekoladenu v. Gonzales*, 459 F.3d 500 (4th Cir. 2006) (concluding that the filing of a motion to reopen does not automatically toll the voluntary departure period), *and Banda-Ortiz v. Gonzales*, 445 F.3d 387 (5th Cir. 2006) (same).

-11-

has since resolved the circuit split, finding no statutory authority for the proposition that the voluntary departure period should be tolled automatically during the pendency of a motion to reopen. *Dada v. Mukasey*, 128 S.Ct. 2307, 2318-19 (2008). In light of the Supreme Court's decision in *Dada*, we must reject the Santoses' argument that their departure date should have been tolled automatically. As the Supreme Court has indicated, the appropriate means of remedying the dilemma faced by an alien who has been granted voluntary departure but who seeks to reopen his case is to permit that alien to file a motion to withdraw his voluntary departure request. *Id.* at 2319-20.

**3. The Motion for Stay of Removal and Extension of Voluntary Departure**

We turn next to the Santoses' claim that the BIA erred by failing to rule on the Santoses' motion for stay of deportation and extension of voluntary departure. The Santoses ask this court to remand this case to the BIA so that it may rule on that motion.

We conclude that it is unnecessary to remand this case to the BIA. To the extent the Santoses claim the BIA erred by failing to rule on their motion for a stay of removal, that claim became moot when this court granted petitioners' unopposed motion for stay of removal. To the extent the Santoses claim the BIA erred in failing to rule on their motion for an extension of voluntary departure, we conclude that it would be futile to remand this case to the BIA because the BIA

lacks authority to grant such an extension. According to the Code of Federal Regulations, the authority to extend time for voluntary departure rests exclusively with the district director for the Department of Homeland Security, the Deputy Executive Associate Commissioner for Detention and Removal, and the Director of the Office of Juvenile Affairs. 8 C.F.R. § 1240.26(f); *see also Dada*, 128 S.Ct. at 2313 ("Appropriate immigration authorities may extend the time to depart but only if the voluntary departure period is less than the statutory maximum in the first instance."); *Lopez*, 313 F. App'x at 102 (concluding that the BIA lacked authority to rule on the petitioner's motion for an extension of voluntary departure, which was filed before the Supreme Court issued its ruling in *Dada*).

### III. Conclusion

In sum, we hold that the BIA did not abuse its discretion when it denied the Santoses' motion to reopen the proceedings. Furthermore, we reject the Santoses' claim that their voluntary departure period should have been tolled automatically during the pendency of their motion to reopen. We conclude that it is unnecessary to remand this case to the BIA, as the BIA is without authority to grant the Santoses' motion for extension of voluntary departure. Accordingly, we **DENY** the petition for review and lift the stay of removal previously entered.

ENTERED FOR THE COURT

Gregory K. Frizzell
District Judge

-13-